**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
HENRY SHATKIN, on behalf of himself and :  No. 07 Civ. 7928 (PAC)
all others similarly situated, :
:
:
        Plaintiff, :
:
     v. :
:
:
THE BANK OF NEW YORK MELLON :
CORPORATION and THE BANK OF NEW :
YORK, N.A., :
:
       Defendants :
:
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF IMTIAZ A. SIDDIQUI IN SUPPORT OF MOTION FOR APPOINTMENT OF INTERIM COUNSEL

   I, Imtiaz A. Siddiqui, submit this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

   1. I am associated with the law firm of Lovell Stewart Halebian LLP and one of the attorneys of record for plaintiffs in this matter. I submit this declaration in support of the instant motion for appointment of interim counsel. I am familiar with the facts set forth in this declaration based upon personal knowledge.

   2. Attached hereto as Exhibit A is a true and correct copy of a *Notice of Transfer of Claim* by Shira McKinlay to Argo Partners, as filed with the United States Bankruptcy Court for the Northern District of Illinois, No. 07-14987, on January 3, 2008 (Docket No. 343).

3.     Attached hereto as Exhibit B is a true and correct copy of the current firm résumé of Lovell Stewart Halebian LLP.

4.     Attached hereto as Exhibit C is a true and correct copy of the current firm résumé of Gilbert Randolph, LLP.

I declare under penalty of perjury that the foregoing is true and correct.


EXECUTED at New York, New York, on this 15th day of February, 2007.



/s/Imtiaz A. Siddiqui
Imtiaz A. Siddiqui

# Exhibit A

# United States Bankruptcy Court

## Northern District of Illinois
### In re: **Sentinel Management Group, Inc.**, Case No. **07-14987**

Court ID (Court use only)_____

## NOTICE OF TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this notice

Name of Transferee
**Argo Partners**

Name and Address where notices and payments
to transferee should be sent
**Argo Partners**
**12 West 37th Street, 9th Floor**
**New York, NY 10018**
Phone:
**(212) 643-5446**

Name of Transferor
**Shira Mckinlay**

Court Record Address of Transferor
(Court Use Only)

Last Four Digits of Acct #: _____

Name and Current Address of Transferor
**Shira Mckinlay**
**PO Box 533351**
**Orlando, FL 32853**
Phone:
**(407) 475-0976**

Court Claim # (if known): 48

Date Claim Filed:

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:/s/ Matthew V. Binstock                    Date: 1/3/2008
Transferee/Transferee's Agent
*Penalty for making a false statement*: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571

| ~~DEADLINE TO OBJECT TO TRANSFER~~ |
|---|
| The transferor of claim named above is advised that this Notice of Transfer of Claim Other Than for Security has been filed in the clerk's office of this court as evidence of the transfer. Objections must be filed with the court within twenty (20) days of the mailing of this notice. If no objection is timely received by the court, the transferee will be substituted as the original claimant without further order of the court. |

Date:_____

_____
**CLERK OF THE COURT**

DEC-24-2007 MON 11:28 AM LEFKOWITZ & SHAW, P.A.    FAX NO. 3    P. 02

## ASSIGNMENT OF CLAIM

**Shira Mckinlay,** having a mailing address at PO Box 533351 , Orlando, FL 32853 ("Assignor"), in consideration of the sum of _____ (e "Purchase Price"), does hereby transfer to Argo Partners, which includes Argo Partners II LLC and Argo Partners Fund III LLC, having an address at 12 West 37th Street, 9th Fl. New York, NY 10018 ("Assignee") all of Assignor's right, title and interest in and to the claim or claims of Assignor, as more specifically set forth (the "Claim") against **Sentinel Management Group, Inc.,** ("Debtor") Debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"), Case No. 07-14987 in the currently outstanding amount of not less than **$131,309.82** and all rights and benefits of Assignor relating to the Claim, including without limitation the Proof of Claim identified below and Assignor's rights to receive all interest, penalties and fees, if any, which may be paid with respect to the Claim and all other claims, causes of action against the Debtor, its affiliates, any guarantor or other third party, together with voting and other rights and benefits arising from, under or relating to any of the foregoing, and all cash, securities, instruments and other property which may be paid or issued by Debtor in satisfaction of the Claim. The Claim is based on amounts owed to Assignor by Debtor as set forth below and this assignment shall be deemed an absolute and unconditional assignment of the Claim for the purpose of collection and shall not be deemed to create a security interest

Assignor represents and warrants that (Please Check One):

[X] A Proof of Claim in the amount of $ _131,935.36_____ has been duly and timely filed in the Proceedings (and a true copy of such Proof of Claim is attached to this Assignment). If the Proof of Claim amount differs from the Claim amount set forth above, Assignee shall nevertheless be deemed the owner of that Proof of Claim subject to the terms of this Agreement and shall be entitled to identify itself as owner of such Proof of Claim on the records of the Court

Assignor further represents and warrants that the amount of the Claim is not less than **$131,309.82** that the Claim in that amount is valid and that no objection to the Claim exists and is listed by the Debtor on its schedule of liabilities and any amendments thereto ("Schedule") as such; the Claim is a valid, enforceable claim against the Debtor; no consent, approval, filing or corporate, partnership or other action is required as a condition to, or otherwise in connection with, the execution, delivery and performance of this Agreement by Assignor, this Agreement has been duly authorized, executed and delivered by Assignor and Assignor has the requisite power and authority to execute, deliver and perform this Agreement; this Agreement constitutes the valid, legal and binding agreement of Assignor, enforceable against Assignor in accordance with its terms; no payment or other distribution has been received by Assignor, or by any third party on behalf of Assignor, in full or partial satisfaction of, or in connection with the claim; Assignor has not engaged in any acts, conduct or omissions that might result in Assignee receiving in respect of the Claim proportionately less payments or distributions or less favorable treatment than other unsecured creditors; the Claim is not subject to any factoring agreement. Assignor further represents and warrants that no payment has been received by Assignor, or by any third party claiming through Assignor, in full or partial satisfaction of the Claim, that Assignor has not previously assigned, sold or pledged the Claim to any third party, in whole or in part, that Assignor owns and has title to the Claim free of any and all liens, security interests or encumbrances of any kind or nature whatsoever, and that there are no offsets or defenses that have been or may be asserted by or on behalf of Debtor or any other party to reduce the amount of the Claim or to impair its value. Assignor agrees to indemnify Assignee from all losses, damages and liabilities, including attorneys fees and expenses, which result from Assignor's breach of any representation, warranty or covenant set forth herein, or from any action, proceedings, objection or investigation relating to any attempt or threatened attempt to avoid, disallow, reduce, subordinate or otherwise impair the Claim or otherwise delay payments or distributions in respect of the Claim. Neither party hereto assumes or shall be responsible for any obligations or liabilities of the other party related to or in connection with this Assignment of Claim

Assignor is aware that the above Purchase Price may differ from the amount ultimately distributed in the Proceedings with respect to the Claim and that such amount may not be absolutely determined until entry of a final order confirming a plan of reorganization. Assignor acknowledges that, except as set forth in this Assignment, neither Assignee nor any agent or representative of Assignee has made any representation whatsoever to Assignor regarding the status of the Proceedings, the condition of Debtor (financial or otherwise) or any other matter relating to the Proceedings, the Debtor or the Claim. Assignor represents that it has adequate information concerning the business and financial condition of Debtor and the status of the Proceedings to make an informed decision regarding the sale of the Claim and that it has independently and without reliance on Assignee, and based on such information as Assignor has deemed appropriate (including information available from the files of the Court in the Proceedings), made its own analysis and decision to enter into this Assignment of Claim

Assignor agrees to make to Assignee immediate proportional restitution and repayment of the above Purchase Price to the extent that the Claim is disallowed, subordinated, objected to or otherwise impaired for any reason whatsoever in whole or in part, together with interest at the rate of ten percent (10%) per annum on the amount repaid for the period from the date of this Assignment through the date such repayment is made. Assignor further agrees to reimburse Assignee for all costs and expenses, including reasonable legal fees and costs, incurred by assignee as a result of such disallowance

In the event the Claim is ultimately allowed in an amount in excess of the amount purchased herein, Assignor is hereby deemed to sell to Assignee, and Assignee hereby agrees to purchase, the balance of said Claim at the same percentage of claim paid herein not to

exceed twice the Claim amount specified above. Assignee shall remit such payment to Assignor upon Assignee's satisfaction that the Claim has been allowed in the higher amount and is not subject to any objection by the Debtor.

Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claim herein assigned. Assignor grants unto Assignee full authority to do all things necessary to enforce the claim and its rights thereunder pursuant to this Assignment of Claim. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defend the Claim's validity or amount in the Proceedings. Assignor agrees to take such further action, at its own expense, as may be necessary or desirable to effect the assignment of the Claim and any payments or distributions on account of the Claim to Assignee including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consents.

Assignor agrees to forward to Assignee all notices received from Debtor, the Court or any third party with respect to the Claim assigned herein and to vote the Claim, and to take such other action with respect to the Claim in the Proceedings, as assignee may from time to time request. Assignor further agrees that any distribution received by Assignor on account of the Claim, whether in the form of cash, securities, instrument or any other property, shall constitute property of Assignee to which Assignee has an absolute right, and that Assignor will hold such property in trust and will, at its own expense, promptly (but not later than 5 business days) deliver to Assignee any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee.

The terms of this Assignment of Claim shall be binding upon, and shall inure to the benefit of and be enforceable by Assignor, Assignee and their respective successors and assigns.

Assignor hereby acknowledges that Assignee may at any time reassign the Claim, together with all right, title and interest of Assignee in and to this Assignment of Claim. All representation and warranties made herein shall survive the execution and delivery of this Assignment of Claim and any such re-assignment. This Assignment of Claim may be executed in counterparts and all such counterparts taken together shall be deemed to constitute a single agreement.

This Assignment of Claim shall be governed by and construed in accordance with the laws of the State of New York. Any action arising under or relating to this Assignment of Claim may be brought in any State or Federal court located in the State of New York, and Assignor consents to and confers personal jurisdiction over Assignor by such court or courts and agrees that service of process may be upon Assignor by mailing a copy of said process to Assignor at the address set forth in this Assignment of Claim, and in any action hereunder Assignor waives the right to demand a trial by jury.

## CONSENT AND WAIVER

Assignor hereby acknowledges and consents to all of the terms set forth in this Assignment of Claim and hereby waives its right to raise any objections thereto and its right to receive notice pursuant to Rule 3001 of the Rules of Bankruptcy Procedure.

IN WITNESS WHEREOF, the undersigned Assignor hereunto sets its hand this __24th__ day of __December__ 2007.
ATTEST:

By: _____    __407 913 4593__
      Signature                              Telephone #

__Shira McKinlay__       __N/A__ _____        __shira.mckinlay@stanfordalumni.org__
Print Name/Title                Fax #                                        E-mail
Shira Mckinlay

IN WITNESS WHEREOF, the undersigned Assignee hereunto sets its hand this __3rd__ day of __January__ 2008.
ATTEST:

By: _____
      Matthew V. Binstock
      Argo Partners
      (212) 643-5446
      (212) 643-6401 Fax

DEC-24-2007 MON 11:29 AM LEFKOWITZ & SHAW, P.A.    FAX NO. 3    P. 04

FORM B10 (Official Form 10) (04/07)

| UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF ILLINOIS | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor Sentinel Management Group, Inc. | Case Number 07-14987 | Trustee |
|---|---|---|
| | Judge Initials: JHS | File Claim Form With: United States Bankruptcy Court P.O. Box A3631 Chicago, Illinois 60690-1612 |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):
Shira McKinlay

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and Address where notices should be sent:
Shira McKinlay
PO Box 533351
Orlando, FL 32853-3351

☐ Check box if you have never received any notices from the bankruptcy court in this case.
☐ Check box if the address differs from the address on the envelope sent to you by the court.

Telephone Number: 407 913 4593

THIS SPACE IS FOR COURT USE ONLY

Last four digits of account or other number by which creditor identifies debtor:

Check here if ☐ replaces
this claim ☐ amends    a previously filed claim, dated:_____

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other _ACCOUNT HOLDING - CUSTOMER_

☐ Retiree benefits as defined in 11 U.S.C §1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of your SS #: _____
Unpaid compensation for services performed
from _____ to _____
(date)    (date)

**2. Date debt was incurred:**
_VARIOUS - FROM MAY 2006 to AUGUST 2007_

**3. If court judgment, date obtained:**

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed. See reverse side for important explanations

Unsecured Nonpriority Claim $_131,935.36_
☒ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority.

Amount entitled to priority $_____

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950,)* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☐ Real Estate  ☐ Motor Vehicle  ☐ Other _____

Value of Collateral: $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any: $_____

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C § 507(a)(8).
☐ Other - Specify applicable paragraph of 11 U.S.C § 507(a)(__).
*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**5. Total Amount of Claim at Time Case Filed:** $_131,935.36_ _____ _____ _131,935.36_
(unsecured)  (secured)  (priority)  (Total)

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

THIS SPACE IS FOR COURT USE ONLY

**6. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**7. Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

**8. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

| Date 12/17/07 | Sign and print the name and title. If any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any). [signature] |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C §§ 152 and 3571

015979

DEC-24-2007 MON 11:30 AM LEFKOWITZ & SHAW, P.A.    FAX NO. 3    P. 05

Edens Corporate Center
660 Dundee Road, Suite 460
Northbrook, IL 60062
(847) 412-4400


**SENTINEL**
Sentinel Management Group, Inc

[ Account No. SBM001-USD-001    Account Name: Shira McKinlay

For the attention of:
Shira McKinlay
PO Box 533351
Orlando FL 32853

13-Aug-2007    Page 1

For the account of:
Shira McKinlay
PO Box 533351
Orlando, FL 32853

## Daily Account Activity

| Transaction No. | Description of Transaction | Principal Amount | Income Amount |
|---|---|---|---|
| | Beginning Balance | | 213.29 |
| 0000637384 | Sale of Securities | 130,935.36 | |
| 0000637385 | Interest Income | | 72.56 |
| | Management Fee | | -4.36 |
| | Purchase of Securities@ 6.42 | -130,935.36 | |
| | Ending Balance | | 281.49 |

## Asset List

| CUSIP | Security Description | Units | Cost | Market Value |
|---|---|---|---|---|
| 01450AAJ9 MTGE | ALESC 11A COM | 4,553.61 | 4,434.70 | 4,446.50 |
| 863121208 PFD | STRATS 0 | 182.14 | 4,335.31 | 4,351.32 |
| 87330WAJ6 MTGE | TBRNA 2005-3A D | 910.72 | 876.80 | 898.34 |
| 87331VAL2 MTGE | TBRNA 2007-8A E | 4,553.61 | 4,673.37 | 4,677.86 |
| 87330UAK7 MTGE | TBRNA 2005-2A E1 | 6,639.16 | 6,012.68 | 6,032.23 |
| 73941X676 PFD | PPLUS 4.2828 | 182.14 | 3,828.01 | 3,847.47 |
| 87331AAJ3 MTGE | TBRNA 2006-6A E1 | 4,553.61 | 4,552.35 | 4,556.42 |
| PP3I10ASH9 | XXIII 0 12/22/36 | 30,413.54 | 29,056.56 | 29,060.44 |
| PP3H0ASK2 | PXXV 0 06/22/37 | 9,107.21 | 8,844.06 | 8,852.21 |
| 741382AJ4 CORP | PRETSL 1.2 03/22/38 | 4,553.61 | 4,505.73 | 4,510.48 |
| 741382AL9 CORP | PRETSL 0 03/22/38 | 16,301.91 | 14,342.40 | 14,345.68 |
| PP3I10ASI7 CORP | PXXII 0 09/22/36 | 27,959.14 | 26,324.37 | 26,329.12 |
| 16705FDJ9 MTGE | CHEYF 2006-12MC M12B | 4,553.61 | 4,590.09 | 4,594.86 |
| 74042HAB3 CORP | PRETSL 0 12/22/35 | 455.36 | 455.38 | 459.53 |
| 74042JAE3 CORP | PRETSL 0 03/22/38 | 6,784.87 | 6,846.04 | 6,848.19 |
| 74011UAE9 CORP | PRETSL 0 06/24/34 | 7,025.30 | 7,257.51 | 7,265.01 |
| | | 128,729.54 | 130,935.36 | 131,075.66 |

## Account Summary

| | |
|---|---|
| Net Equity: | 131,216.85 |
| Net Interest: | 68.20 |
| Net Interest Rate: | 6.25 |

## Terms and Conditions

The parties herein acknowledge their
duty to examine the statement and to
immediately report any discrepancies
herein

Illinois Northern Bankruptcy Live System - Modify the description for an existing claim    Page 1 of 1

| Creditor: (11555404) Shira McKinlay PO Box 533351 Orlando, FL 32853 | Claim No: 48 Filed 12/21/2007 Entered 12/26/2007 | Status: Filed by CR Entered by Reed, Patricia Modified: |
|---|---|---|
| Unsecured claimed: $131935.36 **Total** claimed: **$131935.36** | | |
| History: ☮ 48-1    12/21/2007 Claim #48 filed by Shira McKinlay , total amount claimed: $131935.36 (Reed, Patricia) | | |
| Description: | | |
| Remarks: | | |

NTCASCLM

# United States Bankruptcy Court
### *Northern District of Illinois*
### *Eastern Division*
### *219 S Dearborn*
### *7th Floor*
### *Chicago, IL 60604*

---

In Re:

Sentinel Management Group, Inc.          Case No. :  07−14987
650 Dundee Road                          Chapter :  11
Suite 460                                Judge :     John H. Squires
Northbrook, IL 60062
SSN: EIN: 36−3083123

---

## NOTICE TO ASSIGNOR OF FILING OF ASSIGNMENT/TRANSFER OF CLAIM

TO : Shira McKinlay

Pursuant to Bankruptcy Rule 3001(e), you are hereby advised that there has been filed in this office an assignment to Argo Partners of your claim in the above matter, designated Claim No. 48 in the amount of $131935.36.   If no objections are filed by you on or before January 24, 2008 the Court shall substitute Argo Partners in your place and stead as a claimant.   If objections to the assignment of claim are filed, a hearing will be scheduled by the court. You will be notified of the date of this hearing.

For the Court,

Dated: January 4, 2008

Kenneth S. Gardner , Clerk
United States Bankruptcy Court

# Exhibit B

# Lovell Stewart Halebian, LLP

Lovell Stewart & Halebian LLP ("LSH") is a national law firm with offices in New York City and Bellevue, Washington (through our affiliated firm of Lovell Mitchell & Barth, LLP). We are dedicated to providing clients with the ability to identify, investigate and react decisively to recover losses from wrongdoing by the companies in which they have invested.

LSH attorneys have been appointed as lead or co-lead counsel in numerous class actions of national significance. We directed securities fraud and other investor litigation which resulted in the largest class action recovery ever obtained *under three different federal statutes.* As co-lead counsel in a nationwide suit against NASDAQ market makers, our attorneys garnered $1.027 billion for investor class members by illustrating that the defendants had systematically overcharged for executing trades. *In re NASDAQ Market-Makers Antitrust Litigation,* 187 F.R.D. 465, 471 (S.D.N.Y. 1998) ("this all-cash settlement, achieved through 'four years of hard-fought litigation,' apparently is the largest recovery (class action or otherwise) in the hundred year history of the state and federal antitrust laws"). LSH attorneys were also Lead Counsel and Chairman of Executive Committee in *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393 (S.D.N.Y. 1999), settling this case for a record $145.9 million – the largest in the history of the Commodity Exchange Act – and earning the praise of Senior Judge Milton Pollack of the U.S. District Court for the Southern District of New York.[1] LSH also served as Co-Lead Counsel in *Blatt v. Merrill Lynch Fenner & Smith, Incorporated,* 916 F. Supp. 1343 (D.N.J. 1996), a $76.5 million settlement which recovered 100% of losses and provided class members with a positive return on their investment. We have also functioned as lead or co-lead counsel representing investors in numerous other securities fraud litigations returning hundreds of millions of dollars to these investors.

# The Shatkin v. Bank of New York Litigation Team

## Christopher Lovell

Chris, the managing partner of our firm, has tried more than fifty cases, including numerous highly-publicized cases that have resulted in significant legal precedent. Chris graduated from New York University School of Law in 1977, and was associated with the law firm of Beekman & Bogue from 1976 until 1980. Chris has maintained a private law practice since 1980, including while he was simultaneously employed as Vice-President and General Counsel of American Bakeries Company (a *Fortune* 500 company) from 1981 through 1983. Chris has an "AV" rating from Martindale-Hubbell, and was first appointed by a Court as class action or

---

[1]    "The unprecedented effort of Counsel exhibited in this case led to their successful settlement efforts and its vast results. Settlement posed a saga in and of itself and required enormous time, skill and persistence. Much of that phase of the case came within the direct knowledge and appreciation of the Court itself. Suffice it to say, the Plaintiff's counsel did not have an easy path and their services in this regard are best measured in the enormous recoveries that were achieved under trying circumstances in the face of virtually overwhelming resistance." *In re Sumitomo Copper Litigation,* 74 F.Supp. 2d at 396.

derivative action counsel in 1981, and has since been appointed as class or derivative action counsel in more than forty cases, including:

- Co-lead counsel in *In re NASDAQ Market-Makers Antitrust Litigation*, M.D.L. No. 123 (S.D.N.Y.). This case resulted in a record $1.027 billion settlement for the class of injured investors;

- Coordinating Chairman, Plaintiffs' Executive Committee in *In re Initial Public Offering Antitrust Litigation*, 01 Civ. 2014 (S.D.N.Y.). This is a highly-publicized class action alleging a conspiracy by certain underwriters to restrain trade in the allocation of shares in initial public offerings;

- Lead Counsel and Chairman of Executive Committee in *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393 (S.D.N.Y. 1999). Chris settled this case for a record $145.9 million – the largest in the history of the Commodity Exchange Act – earning the praise of Senior Judge Milton Pollack of the U.S. District Court for the Southern District of New York.[2];

- Lead Counsel in *In re The Warnaco Group, Inc.*, 01 Civ. 3346 (S.D.N.Y.). This nationwide securities class action case is currently pending in U.S. District Court for the Southern District of New York;

- Lead Counsel in *Leykin v. AT&T Corp., et al*, 02 Civ. 1765 (S.D.N.Y.), a nationwide class action securities fraud litigation regarding the failure of At Home – one of the original "internet stock" disasters;

- Co-lead counsel in *Blatt v. Merrill Lynch Fenner & Smith, Incorporated,* 916 F. Supp. 1343 (D.N.J. 1996) $76.5 million settlement which recovered 100% of losses and provided class members with a positive return on their investment;

- Sole Class Counsel in *Moelis v. Hyperion Capital Management, Inc.*, 94 Civ. 3328 (S.D.N.Y.). After securities claims made by two earlier lawsuits had been dismissed in their entirety, Chris pursued those claims on somewhat different legal theories leading to a settlement of $5 million;

- Member of the Executive Committee in the *J.P. Morgan Chase Securities Litigation*. This case is currently pending in U.S. District Court in Manhattan, and alleges that J.P. Morgan Chase materially misrepresented its Enron-related liabilities in various public statements and SEC filings;

- Co-lead counsel in *In re Microsoft Litigation*, M.D.L. No. 1332 (D. Md.) Nationally consolidated antitrust class actions alleging long-term unlawful maintenance of a monopoly and other anticompetitive behavior by Microsoft;

- Chairman of the Co-lead counsel in *In re Soybean Futures Litigation*, 89 Civ. 7009 (N.D. Ill.) $21.5 million settlement returning all losses to class members, even after attorneys' fees;

---

[2]    "The unprecedented effort of Counsel exhibited in this case led to their successful settlement efforts and its vast results. Settlement posed a saga in and of itself and required enormous time, skill and persistence. Much of that phase of the case came within the direct knowledge and appreciation of the Court itself. Suffice it to say, the Plaintiff's counsel did not have an easy path and their services in this regard are best measured in the enormous recoveries that were achieved under trying circumstances in the face of virtually overwhelming resistance." *In re Sumitomo Copper Litigation*, 74 F.Supp. 2d at 396.

- Lead counsel in *Kaplan v. E.F. Hutton Group, Inc.*, No. 88-00889 (N.Y. Sup. Ct.) $8.18 million settlement providing a class of terminated executives substantially all of their damages, even after attorneys' fees were deducted from the settlement; and

- Member of the Executive Committee in numerous other cases, including *In re TCW/DW North American Government Income Trust Securities Litigation*, 95 Civ. 0167 (S.D.N.Y.) ($30 million settlement); *Krome v. Merrill Lynch, Pierce, Fenner & Smith*, Consolidated 85 Civ. 0765 (S.D.N.Y.) (all claiming class members recovered 100% of their losses).

## Karl P. Barth

Karl represents investors seeking to protect assets and recover investment losses from companies engaged in securities and accounting wrongdoing. Prior to starting the Bellevue office of LM&B, Karl was a partner at another national firm specializing in securities class action litigation. Formerly, he was a Senior Consultant at a national financial consulting firm specializing in expert witness testimony on accounting and financial issues.

Karl has performed the preliminary investigation and drafted the initial complaint in numerous high-profile securities fraud cases that have won large recoveries for his clients against companies such as Boeing, Einstein Noah Bagel Corp., Identix, Midcom Communications, Midisoft, Oppenheimer Delta Partners, Pepsi Puerto Rico Bottling Co., PriceCostco, Templeton Vietnam Opportunities Fund and Wall Data. These cases typically assert claims against the officers and directors of the corporate defendant, its outside auditors, and other responsible parties and involve sophisticated financial and accounting issues.

Karl has worked on the legal, financial and accounting aspects of numerous cases, including the following representative sample:

- In the *Identix* litigation, Karl had primary responsibility for his firm's position as co-lead counsel in this securities fraud case that was filed in the Northern District of California. Karl researched the legal, accounting and factual aspects of the complaint, which included allegations that the Company falsified revenues in its financial statements in violation of Generally Accepted Accounting Principles ("GAAP") and SEC regulations. The case settled for a large percentage of estimated losses, and the recovered money has been distributed to class members;

- In the *Pepsi Puerto Rico Bottling* case, Karl performed the initial analysis and drafted the initial complaint on behalf of an institutional investor acting as a class representative for all injured investors. The case involved allegations of fraudulent financial reporting, and was resolved on very favorable terms for the class;

- In *Boston Chicken Securities Litigation*, Karl uncovered Boston Chicken's complex financial accounting and reporting structure and revealed massive fraud to shareholders and bondholders. Karl drafted and filed the first securities fraud complaint against the company, its' officers, accountants and underwriters; and

- In the *Morrison Knudsen Securities Litigation*, Karl investigated the widespread accounting and auditing improprieties committed by MK and its independent auditor and prepared an amended complaint making detailed allegations of the accounting misconduct by the Company, and audit misconduct by its independent accountant. Shortly after this amended complaint was filed, the case settled for approximately $70 million, including a multi-million dollar settlement from the auditor, making it one of largest securities settlements in the history of the Pacific Northwest.

Karl graduated from Georgetown University Law Center, and from the University of Virginia with a B.S. in Accounting. Karl is a licensed Certified Public Accountant and a Certified Fraud Examiner. He is admitted to practice in various state and federal courts throughout the country.

## Gary S. Jacobson

Gary is a 1972 graduate of Yale (with Honors), and a 1976 graduate of the University of Virginia Law School where he served as an editor of the Law Review (1974 – 1976). Gary has been litigating antitrust cases since 1976, including *Westinghouse Electric Corp. v. Ris Algom Ltd.*, et al., (N.D. Ill.) and *Age International, Inc. v. Southern Wine & Spirits*, (E.D.N.Y.). Gary has tried more than twenty-five cases to verdict, involving claims of unfair competition, RICO, Lanham Act, patent infringement, misappropriation of trade secrets, negotiable instruments, sales and warranties, breach of fiduciary duty, fraudulent conveyance, and personal injury. He has an "AV" rating from Martindale-Hubbell.

## Imtiaz A. Siddiqui

Imtiaz is a graduate of The College of New Jersey (formerly Trenton State College) with a B.S. in Biology and a Chemistry minor, and is also a graduate of Tulane Law School, cum laude, where he was Editor in Chief of the Tulane Journal of Technology and Intellectual Property, and Student Attorney for the Tulane Civil Litigation Law Clinic. Imtiaz is licensed to practice in the State of New York and before the United States District Courts for the Southern and Eastern Districts of New York.

## Other Lovell Stewart Halebian Attorneys

**Steven C. Mitchell**

Steve focuses on advising pension funds and institutional investors. Prior to joining Lovell Mitchell & Barth, Steve was a partner at a national firm where he assisted with the actions leading to the 1998 $206 billion "Master Settlement Agreement" with big tobacco. He also held the position of chief counsel of the trial bureau in the office of the Arizona attorney general. As chief counsel, Steve prosecuted and supervised major cases involving civil and criminal racketeering, political crimes, murder and fraud. His many successes earned him the title of Arizona Attorney General Prosecutor of the Year in 1992. While working as an assistant U.S. attorney for the

District of Arizona, Steve served as senior trial attorney and lead counsel to prosecute a group of radical environmentalists who conspired to sabotage a nuclear generating station and a nuclear weapons facility.

**Victor E. Stewart**

Victor was named Valedictorian of St. Marks School Class of 1968. He is a 1972 graduate of Yale, B.A., a 1975 graduate of Harvard Business School, M.B.A., and a 1979 graduate of the University of Virginia Law School, J.D. Victor has more than twenty years' experience in the securities field, including securities litigation, public and private securities offerings and financial markets analysis.


**John Halebian**

John graduated from Georgetown University and received his law degree from Villanova Law School, where he served as a case and comments editor on the *Villanova Law Review*, and as Editor-in-Chief of *The Docket*, the law school's newspaper.

John specializes in federal and state corporate and commercial litigation with an emphasis on class actions and securities litigation. He has represented officers and directors, lawyers and accountants in defending various securities class actions, and has prosecuted numerous securities class actions against many major public companies.

John was formerly a founding member of Wechsler Harwood Halebian & Feffer LLP (now Wechsler Harwood LLP) where he specialized in securities class action and derivative litigation and had responsibility for numerous complex corporate and commercial litigations. John has acted as lead or co-lead counsel, or as a member of an executive or steering committee in class action securities litigation throughout the country, including:

- *Howard Savings Bank Securities Litigation*, 89 Civ. 5148 (D.N.J. 1989) Recovery of $7.6 million in connection with claims alleging false and misleading statements relating to bank loan loss reserves;

- *Avon Products, Inc. Securities Litigation*, 89 Civ. 6216 (S.D.N.Y. 1989) Recovery of $6.4 million relating to claims alleging false and misleading statements regarding earnings projections;

- *Goldsmith v. Technology Solutions Co.*, 92 Civ. 4374 (N.D. Ill. 1992) Recovery of $4.6 million in connection with allegations of false and misleading statements with respect to the Company's revenue recognition policies; and

- *NationsBank Litigations*, John was one of the lead attorneys in several actions pending in state and federal courts against NationsBank relating to its sales of securities to bank customers, which collectively settled for approximately $60 million. Most of the recipients of awards in the *NationsBank Litigation* received between 50% and 100% of their recognized losses from the settlement.

John has also tried to conclusion several complex commercial and securities fraud litigations on behalf of individual claimants and companies before the New York Stock Exchange and National Association of Securities Dealers and the American Arbitration Association. These actions generally involved brokerage customer claims of churning or unsuitable investments and corporate wrongdoing.

**Peggy J. Wedgworth**

Peggy was named Valedictorian of Trinity Episcopal Day School, Class of 1979, and was on the team that placed second in the National Moot Court Competition conducted by the Association of the Bar of the City of New York during 1985/1986. She tried more than twenty criminal cases as an Assistant District Attorney in Brooklyn, New York from 1986 to 1989. Peggy also has extensive experience litigating various securities fraud and price fixing cases including *In re Brand Name Prescription Drugs Antitrust Litigation*, 1996 WL 351180 (N.D. Ill. June 24, 1996), (approving $351 million settlements as fair) where, among other things, she was in charge of the preparation for the defendants' expert depositions.

**Keri L. Greenheck**

Keri received her law degree from Lewis & Clark Law School and is admitted to practice in California and Washington. Keri previously worked at two national law firms where she specialized in class action securities and antitrust litigation, working on cases against Sonus Pharmaceuticals, Boston Chicken and Boeing, among others.

**Jody Krisiloff**

Jody is a 1976 graduate of Mount Holyoke College, B.A., *summa cum laude*. She is also a 1979 graduate of Columbia University School of Law, J.D. Jody has more than eighteen years' experience with commercial and securities litigation, including litigating primarily class actions since 1991. She had primary responsibility for preparing this firm's argument in opposition to the motion to dismiss in *In re Microsoft*.

**Ian T. Stoll**

Ian graduated from the University of California at Berkeley, A.B., in 1987, and the State University of New York, Buffalo School of Law, J.D., in 1996. He is admitted to practice in New York and before the United States District Courts for the Southern and Eastern Districts of New York.

**Craig M. Essenmacher**

Craig is a graduate of Michigan State University summa cum laude and has a Ph.D. of Philosophy in Chemistry and a B.S. in Chemistry from Michigan State University. Craig was the recipient of the Jurisprudence Award, King Scholarship Program, Alumni Scholarship Award, and the Natural Resources Scholarship Award. Craig is licensed to practice in the State of Michigan, Eastern District of Michigan U.S.D.C, and U.S. Court of Appeals for the Sixth Circuit.

**Christopher M. McGrath**

Christopher is a graduate of the University of Missouri at Columbia, B.A. (with Honors); and a graduate of the University of Missouri at Columbia School of Law.  Christopher is admitted to practice in New York.

**Adam C. Mayes**

Adam is a graduate of Yale University, cum laude, and received his M.A. in Asian Studies and his J.D. from the University of California, Berkeley.  Adam studied at Chiang Mai University, Thailand, and was Legislative Assistant to Members of the Hong Kong Legislative Council, (1993 – 1997.  Adam is admitted to practice in California and New York.

**Keith Essenmacher**

Keith is a graduate of Michigan State University, B.S. in Physiology/Pre-Med; and a graduate of Michigan State University Law.  Keith is admitted to practice in the State of Michigan, and before the United States District Court for the Eastern District of Michigan.

# Exhibit C

# GILBERT RANDOLPH
## LLP

Gilbert Randolph LLP has a national reputation for effectively advising and representing plaintiffs in complex commercial disputes.  Based in Washington, D.C., with another office in Austin, Texas, the firm has 30 attorneys representing corporate and individual clients from around the United States and the world.  Gilbert Randolph has for many years received high ranks from Chambers Partners, one of the world's most prominent evaluators of commercial law firms.  The firm's lawyers have recovered billions of dollars for their clients through litigation and settlement.  For instance, Gilbert Randolph recently successfully obtained a $449 million settlement with Travelers on behalf of a bankruptcy debtor for the ultimate benefit of tens of thousands of claimants (pending final court approval).

Gilbert Randolph's practice focuses primarily on complex commercial litigation, multi-party insurance coverage disputes, bankruptcies, and class actions.  Numerous bankruptcy courts have approved the selection of Gilbert Randolph as special litigation counsel for debtors and official creditors committees.  In the class action area, many Gilbert Randolph lawyers have substantial experience as both plaintiff and defense counsel with respect to securities, antitrust, employment, housing, consumer, and other claims.

Currently, Gilbert Randolph:

- serves as lead counsel in New York state court to a class of more than 20,000 individuals in a cutting-edge insurance coverage dispute that, after a full trial on the merits, resulted in a landmark decision in favor of the class seeking insurance coverage; Gilbert Randolph continues to serve as lead counsel for the class as respondents in connection with the insurers' appeals.

- represents several statewide classes of individuals in over a dozen cases pending in four states involving claims against title insurers for overcharging consumers for title insurance premiums.

- serves on the plaintiffs' steering committee in an action brought by timeshare owners against one of the largest timeshare exchange companies in the world for violations of the New Jersey consumer protection statute.

- advises lead counsel in a number of major securities and other class actions concerning insurance issues.

The Gilbert Randolph partners who will be directly involved in this representation include:

*Scott D. Gilbert.*  Over the past twenty-five years, Scott Gilbert has negotiated and settled numerous highly contentious multiparty disputes, recovering billions of dollars for his clients. He is an internationally recognized leader in the field of alternative dispute resolution and has taught at several leading law schools.  Mr. Gilbert was the primary policyholder negotiator and drafter of the Wellington Agreement, which is the largest insurance settlement in U.S. history. He also was the lead negotiator in the above-referenced $449 million settlement with Travelers. Mr. Gilbert graduated from the University of Chicago Law School and was previously a partner at Covington & Burling LLP and Dickstein Shapiro Morin & Oshinsky LLP.

*David B. Killalea.*  David Killalea has a diverse litigation practice.  Mr. Killalea currently is representing classes of consumers in over one dozen state and federal cases concerning a variety of alleged unfair business practices.  In the area of insurance recovery, he has represented companies in securing insurance for their mass-tort and other liabilities in state and federal litigation, in alternative dispute resolution proceedings, and in multi-party negotiations, including as lead insurance litigator in the $449 million Travelers settlement discussed above.  A graduate of the University of Virginia Law School, David was previously a partner at Dickstein Shapiro Morin & Oshinsky LLP.

*Stephen A. Weisbrod.*  Stephen Weisbrod has represented companies, creditors committees, post-bankruptcy litigation trusts, individual directors and officers, and other

individuals and entities in insurance, bankruptcy, securities, and other types of litigation throughout the United States.  He has tried more than 20 cases in six states and the District of Columbia.  Mr. Weisbrod is a graduate of Harvard Law School and was previously associated with Wilmer, Cutler & Pickering and Paul, Hastings, Janofsky & Walker LLP.