104.    On August 4, 2007, having learned about the Individual Defendants' undisclosed leverage scheme and the fact that Sentinel had insufficient liquidity to meet a customer request for redemption, Sentinel's outside counsel advised defendants Philip Bloom and Eric Bloom not to take any additional deposits from customers.  Nonetheless, between August 6 and August 10, the Individual Defendants accepted new deposits from customers totaling over $306 million.

105.    On approximately August 6 or 7, 2007, outside counsel spoke with defendant Philip Bloom and asked him whether Sentinel had stopped taking new customer deposits, as counsel had advised.  Defendant Philip Bloom responded that they could not do that because it would cause a "run on the bank."

106.    On August 7, 2007, Sentinel's outside counsel spoke with defendant Philip Bloom and offered to fly to Wyoming, where defendants Philip and Eric Bloom were vacationing, to discuss Sentinel's crisis situation in person.  Defendant Philip Bloom advised counsel that that was unnecessary because Eric Bloom was returning to Chicago on August 9 and they could meet then.

107.    On August 8, 2007, defendant Philip Bloom spoke to Sentinel's outside counsel by telephone.  Counsel advised defendant Philip Bloom that he should approach the CFTC to seek appointment of a receiver for Sentinel.  The law firm also discussed with defendant Philip Bloom the desirability of advising Sentinel's customers of the existence of the leveraging.  Defendant Philip Bloom refused both suggestions.

108.    On August 9, 2007, Sentinel's outside counsel sent Philip Bloom and Eric Bloom a letter indicating that "we have given you legal advice relating to the operation of your business which you have chosen not to follow at this time . . ." and confirming that the law firm would no longer be able to represent the company.

109.    That same day, and just over a week before the company filed for bankruptcy, defendant Eric Bloom ordered the transfer of yet another $350,000 from Sentinel to SIG, representing the supposed administrative fee for January through July 2007.

110.    Only two business days later, on August 13, 2007, defendant Eric Bloom sent a letter to Sentinel's customers representing that it could no longer honor redemptions, asserting that Sentinel was suffering a liquidity crisis.  Bloom did not disclose in that letter that the liquidity problems had been created by the Individual Defendants' actions in misusing customer assets and in engaging in unauthorized transactions and leveraging.

111.    Upon receiving defendant Eric Bloom's August 13 letter, numerous customers immediately demanded redemption of their accounts.  Four FCM customers, comprising Groups 1 and 8 of SEG 1, were among those demanding redemption.  As of August 13, 2007, the customer statements for these four SEG 1 customers reflected that the customers held an interest in only four securities.  The statements further represented that the market value of their interest in the securities was, in aggregate, approximately $112 million.

112.    In fact, some of the securities which, according to the customer statements, were held for these four SEG 1 customers were actually being held by BONY as collateral for the Sentinel loan, and were therefore unavailable to fund the requested redemption.

113.    Defendant Eric Bloom directed that the four SEG 1 customers be redeemed by using $112 million held in a segregated J.P. Morgan Chase bank account designated to hold SEG 3 customer funds (cash).  The funds were then transferred from the SEG 3 cash account to a SEG 1 cash account, and on or about August 15, 2007 were used to redeem the four SEG 1 FCM customers comprising Groups 1 and 8.

114.    Also on or about August 15, 2007, defendant Eric Bloom decided to sell the SEG 1 portfolio in order to generate funds for SEG 1 customers.

115.    On August 16, 2007 defendant Eric Bloom entered into an agreement with Citadel Equity Fund, Ltd. and Citadel Limited Partnership to sell the SEG 1 portfolio. The Aggregate Notional Value of the Securities was $492,427,896. Defendant Eric Bloom and Citadel agreed that the total market value of the portfolio was roughly $30 million less, $463,555,294. From that "market value," Eric Bloom and Citadel then agreed to a "market uncertainty concession" of $47,150,000. Subsequently, the parties agreed that the sale would actually cover a smaller group of securities. The aggregate value of those securities was approximately $384 million, the agreed-to market value was $363 million, the market uncertainty discount was $44.9 million, and the final sales price was approximately $318 million.

116.    On August 16 and 17, 2007, several SEG 1 customers sued Sentinel and sought and obtained temporary restraining orders prohibiting transfers of securities purportedly segregated for their benefit. On the afternoon of August 17, the NFA issued a Member Responsibility Action prohibiting Sentinel from selling, transferring, encumbering or otherwise disposing of any SEG 3 or House securities. That evening, Sentinel filed for bankruptcy protection.

## TRANSFERS TO INSIDERS

117.    During the one-year period preceding the commencement of Sentinel's bankruptcy case, the Individual Defendants caused Sentinel to transfer more than $20 million to themselves, substantially all of which constituted fraudulently realized proceeds of the defendants' criminal scheme.

118.    Sentinel made the following transfers to SIG on account of supposed "administrative fees":

| NAME | DATE OF PAYMENT | AMOUNT PAID |
|------|-----------------|-------------|
| Sentinel Investment Group, Inc. | 11/20/2006 | $600,000.00 |
| Sentinel Investment Group, Inc. | 2/22/2007 | $350,000.00 |
| Sentinel Investment Group, Inc. | 8/9/2007 | $350,000.00 |

| TOTAL: | | $1,300,000.00 |
|--------|--|---------------|

119.    On information and belief, Sentinel made additional transfers to or for the benefit of defendants, both within and prior to the one-year period preceding the commencement of Sentinel's bankruptcy case, that were characterized as administrative fees (together with the transfers identified in the preceding paragraph, the "Insider Administrative Fee Payments").

120.    The Insider Administrative Fee Payments to SIG were made to or for the benefit of defendant Eric Bloom.

121.    Sentinel made the following transfers to SIG, which were characterized as dividends:

| NAME | DATE OF PAYMENT | AMOUNT PAID |
|------|-----------------|-------------|
| Sentinel Investment Group, Inc. | 3/26/2007 | $1,210,000.00 |
| Sentinel Investment Group, Inc. | 4/30/2007 | $25,000.00 |
| Sentinel Investment Group, Inc. | 5/10/2007 | $620,000.00 |

| TOTAL: | | $1,855,000.00 |
|--------|--|---------------|

122.    On information and belief, Sentinel made additional transfers to or for the benefit of defendants, both within and prior to the one-year period preceding the commencement of Sentinel's bankruptcy case, which were characterized as dividends (together with the transfers identified in the preceding paragraph, the "Insider Dividends").

123.   The $1,210,000.00 transferred to SIG on March 26, 2007 was immediately transferred by SIG to the defendants that are shareholders of SIG, as a dividend from SIG, as follows (collectively, the "March 2007 SIG Dividends"):

| NAME | AMOUNT PAID |
|---|---|
| Philip M. Bloom Grantor Annuity Trust | $708,920.20 |
| Eric A. Bloom Living Trust | $ 28,942.62 |
| Sentinel Financial Services, Inc. | $202,250.36 |
| Fountainhead Investments, Inc. | $260,483.58 |
| **TOTAL:** | **$1,200,596.76** |

124.   The $620,000.00 transferred to SIG on May 10, 2007 was subsequently transferred by SIG to SIG's former preferred shareholders, to redeem their preferred stock in SIG (the "2007 Preferred Shareholder Redemptions"). The 2007 Preferred Shareholder Redemptions were made for the benefit of the defendants that are shareholders of SIG.

125.   On information and belief, in addition to the March 2007 SIG Dividends and the 2007 Preferred Shareholder Redemptions, some or all of the other Insider Dividends transferred to SIG were subsequently transferred by SIG to or for the benefit of the defendants that are shareholders of SIG.

126.   Sentinel made the following transfers to SIG, which were characterized as payments on account of taxes owed by the consolidated tax group of which Sentinel was a member:

| NAME | DATE OF PAYMENT | AMOUNT PAID |
|---|---|---|
| Sentinel Investment Group, Inc. | 9/13/2006 | $110,000.00 |
| Sentinel Investment Group, Inc. | 12/13/2006 | $730,000.00 |
| Sentinel Investment Group, Inc. | 3/14/2007 | $565,000.00 |
| Sentinel Investment Group, Inc. | 6/13/2007 | $460,000.00 |
| Sentinel Investment Group, Inc. | 6/14/2007 | $440,180.00 |
| **TOTAL:** | | **$2,305,180.00** |

127.   On information and belief, Sentinel made additional transfers to or for the benefit of defendants, both within and prior to the one-year period preceding the commencement of Sentinel's bankruptcy case, that were characterized as tax payments (together with the transfers identified in the preceding paragraph, the "Insider Tax Payments").

128.   Sentinel made the following transfers to the following recipients as supposed partial or complete redemptions or withdrawals from accounts within the "House" portfolio:

| NAME | DATE OF PAYMENT | AMOUNT PAID |
|---|---|---|
| Charles Mosley | 8/10/2006 | $40,000.00 |
| Philip M. Bloom Revocable Trust | 8/14/2006 | $40,000.00 |
| Philip M. Bloom Revocable Trust | 8/14/2006 | $3,500.00 |
| Philip M. Bloom Revocable Trust (to Eric A. Bloom Living Trust) | 8/28/2006 | $15,000.00 |
| Charles Mosley | 8/29/2006 | $20,000.00 |
| Philip M. Bloom Revocable Trust | 9/5/2006 | $18,422.00 |
| Philip M. Bloom Revocable Trust to Shuster Design Associates (decorator) | 9/5/2006 | $12,000.00 |
| Fountainhead Investments, Inc. | 9/18/2006 | $10,000.00 |
| Philip M. Bloom Revocable Trust | 9/19/2006 | $450,000.00 |
| Philip M. Bloom Revocable Trust | 9/20/2006 | $7,470.00 |
| Philip M. Bloom Revocable Trust | 10/3/2006 | $151,361.77 |
| Charles Mosley | 10/4/2006 | $7,000.00 |
| Philip M. Bloom Revocable Trust | 10/10/2006 | $500,000.00 |
| Philip M. Bloom Revocable Trust to Paskoski Construction (contractor) | 10/10/2006 | $31,762.00 |
| Charles Mosley | 10/16/2006 | $10,000.00 |
| Philip M. Bloom Revocable Trust | 10/24/2006 | $21,000.00 |
| Charles Mosley | 11/1/2006 | $5,000.00 |
| Philip M. Bloom Revocable Trust | 11/9/2006 | $20,000.00 |
| Philip M. Bloom Revocable Trust to Paskoski Construction (contractor) | 11/14/2006 | $37,000.00 |
| Philip M. Bloom Revocable Trust | 11/20/2006 | $68,000.00 |
| Fountainhead Investments, Inc. | 11/28/2006 | $20,000.00 |
| Philip M. Bloom Revocable Trust | 11/28/2006 | $35,000.00 |
| Philip M. Bloom Revocable Trust | 12/5/2006 | $40,000.00 |
| Philip M. Bloom Revocable Trust (to Shuster Designs) | 12/14/2006 | $11,819.29 |

| NAME | DATE OF PAYMENT | AMOUNT PAID |
|---|---|---|
| Philip M. Bloom Revocable Trust | 12/15/2006 | $50,000.00 |
| Fountainhead Investments, Inc. | 12/18/2006 | $40,000.00 |
| Philip M. Bloom Revocable Trust to Paskoski Construction | 1/3/2007 | $35,000.00 |
| Philip M. Bloom Revocable Trust | 1/3/2007 | $10,579.51 |
| Philip M. Bloom Revocable Trust | 1/8/2007 | $50,000.00 |
| Philip M. Bloom Revocable Trust | 1/17/2007 | $200,000.00 |
| Sybil Bloom Revocable Trust | 1/17/2007 | $200,000.00 |
| Sentinel Financial Services, Inc. | 3/28/2007 | $245,000.00 |
| Sentinel Management International Ltd. | 4/18/2007 | $12,000.00 |
| Philip M. Bloom Revocable Trust | 4/19/2007 | $300,000.00 |
| Sybil Bloom Revocable Trust | 4/19/2007 | $300,000.00 |
| Fountainhead Investments, Inc. | 5/1/2007 | $20,000.00 |
| Philip M. Bloom Revocable Trust | 6/14/2007 | $3,000.00 |
| Fountainhead Investments, Inc. | 6/18/2007 | $19,000.00 |
| Philip M. Bloom Revocable Trust | 6/19/2007 | $65,000.00 |
| Sybil Bloom Revocable Trust | 6/19/2007 | $70,000.00 |
| Philip M. Bloom Revocable Trust | 7/9/2007 | $50,000.00 |
| Philip M. Bloom Revocable Trust | 7/9/2007 | $4,500.00 |
| Sybil Bloom Revocable Trust | 7/9/2007 | $50,000.00 |
| Sentinel Financial Services, Inc. | 7/16/2007 | $1,000.00 |
| Philip M. Bloom Revocable Trust | 7/18/2007 | $5,648,492.43 |
| Sybil Bloom Revocable Trust | 7/18/2007 | $5,652,432.83 |
| Fountainhead Investments, Inc. | 7/19/2007 | $250,000.00 |
| Sentinel Financial Services, Inc. | 8/1/2007 | $1,000.00 |

| TOTAL: | | $14,851,339.83 |
|---|---|---|

129.    On information and belief, Sentinel made additional transfers to or for the benefit of defendants, both within and prior to the one-year period preceding the commencement of Sentinel's bankruptcy case, that were characterized as redemptions or withdrawals from accounts within the House portfolio (together with the transfers identified in the preceding paragraph, the "Insider Withdrawals").

130.    Sentinel made the following transfers to the following recipients within the year preceding the commencement of Sentinel's bankruptcy case, which were characterized as salary payments:

| NAME | DATE OF PAYMENT | AMOUNT PAID |
|---|---|---|
| Eric Bloom | 8/15/2006 | $5,916.66 |
| Philip Bloom | 8/15/2006 | $3,125.00 |
| Charles Mosley | 8/15/2006 | $4,166.66 |
| Eric Bloom | 8/31/2006 | $5,916.66 |
| Philip Bloom | 8/31/2006 | $3,125.00 |
| Charles Mosley | 8/31/2006 | $4,166.66 |
| Eric Bloom | 9/15/2006 | $5,916.66 |
| Philip Bloom | 9/15/2006 | $3,125.00 |
| Charles Mosley | 9/15/2006 | $4,166.66 |
| Eric Bloom | 9/29/2006 | $5,916.66 |
| Philip Bloom | 9/29/2006 | $3,125.00 |
| Charles Mosley | 9/29/2006 | $4,166.66 |
| Eric Bloom | 10/13/2006 | $5,916.66 |
| Philip Bloom | 10/13/2006 | $3,125.00 |
| Charles Mosley | 10/13/2006 | $4,166.66 |
| Eric Bloom | 10/31/2006 | $5,916.66 |
| Philip Bloom | 10/31/2006 | $3,125.00 |
| Charles Mosley | 10/31/2006 | $4,166.66 |
| Eric Bloom | 11/15/2006 | $5,916.66 |
| Philip Bloom | 11/15/2006 | $3,125.00 |
| Charles Mosley | 11/15/2006 | $4,166.66 |
| Eric Bloom | 11/30/2006 | $5,916.66 |
| Philip Bloom | 11/30/2006 | $3,125.00 |
| Charles Mosley | 11/30/2006 | $4,166.66 |
| Eric Bloom | 12/15/2006 | $5,916.66 |
| Philip Bloom | 12/15/2006 | $3,125.00 |
| Charles Mosley | 12/15/2006 | $4,166.66 |
| Eric Bloom | 12/29/2006 | $5,916.66 |
| Philip Bloom | 12/29/2006 | $3,125.00 |
| Charles Mosley | 12/29/2006 | $4,166.66 |
| Eric Bloom | 1/13/2007 | $6,666.67 |
| Philip Bloom | 1/13/2007 | $3,125.00 |
| Charles Mosley | 1/13/2007 | $4,166.66 |
| Eric Bloom | 1/31/2007 | $6,666.67 |
| Philip Bloom | 1/31/2007 | $3,125.00 |
| Charles Mosley | 1/31/2007 | $4,166.66 |
| Eric Bloom | 2/15/2007 | $6,666.67 |
| Philip Bloom | 2/15/2007 | $3,125.00 |

| NAME | DATE OF PAYMENT | AMOUNT PAID |
|---|---|---|
| Charles Mosley | 2/15/2007 | $4,166.66 |
| Eric Bloom | 2/28/2007 | $6,666.67 |
| Philip Bloom | 2/28/2007 | $3,125.00 |
| Charles Mosley | 2/28/2007 | $4,166.66 |
| Eric Bloom | 3/15/2007 | $6,666.67 |
| Philip Bloom | 3/15/2007 | $3,125.00 |
| Charles Mosley | 3/15/2007 | $4,166.66 |
| Eric Bloom | 3/30/2007 | $6,666.67 |
| Philip Bloom | 3/30/2007 | $3,125.00 |
| Charles Mosley | 3/30/2007 | $4,166.66 |
| Eric Bloom | 4/13/2007 | $6,666.67 |
| Philip Bloom | 4/13/2007 | $3,125.00 |
| Charles Mosley | 4/13/2007 | $4,166.66 |
| Eric Bloom | 4/30/2007 | $6,666.67 |
| Philip Bloom | 4/30/2007 | $3,125.00 |
| Charles Mosley | 4/30/2007 | $4,166.66 |
| Eric Bloom | 5/15/2007 | $6,666.67 |
| Philip Bloom | 5/15/2007 | $3,125.00 |
| Charles Mosley | 5/15/2007 | $4,166.66 |
| Eric Bloom | 5/31/2007 | $6,666.67 |
| Philip Bloom | 5/31/2007 | $3,125.00 |
| Charles Mosley | 5/31/2007 | $4,166.66 |
| Eric Bloom | 6/15/2007 | $6,666.67 |
| Philip Bloom | 6/15/2007 | $3,125.00 |
| Charles Mosley | 6/15/2007 | $4,166.66 |
| Eric Bloom | 6/29/2007 | $6,666.67 |
| Philip Bloom | 6/29/2007 | $3,125.00 |
| Charles Mosley | 6/29/2007 | $4,166.66 |
| Eric Bloom | 7/13/2007 | $6,666.67 |
| Philip Bloom | 7/13/2007 | $3,125.00 |
| Charles Mosley | 7/13/2007 | $4,166.66 |
| Eric Bloom | 7/31/2007 | $8,333.34 |
| Philip Bloom | 7/31/2007 | $3,125.00 |
| Charles Mosley | 7/31/2007 | $4,166.66 |
| Eric Bloom | 7/31/2007 | $21,666.71 |
| Eric Bloom | 8/15/2007 | $8,333.34 |
| Philip Bloom | 8/15/2007 | $3,125.00 |
| Charles Mosley | 8/15/2007 | $4,166.66 |
| TOTAL: | | $366,458.20 |

131.    On information and belief, Sentinel made additional transfers to or for the benefit of defendants, both within and prior to the one-year period preceding the commencement of

Sentinel's bankruptcy case, that were characterized as salary payments (together with the transfers identified in the preceding paragraph, the "Insider Salary Payments").

132. Sentinel made the following transfers to the following recipients within the year preceding the commencement of Sentinel's bankruptcy case, which were characterized as bonus payments:

| NAME | DATE OF PAYMENT | AMOUNT PAID |
|---|---|---|
| Eric Bloom | 8/15/2006 | $25,000.00 |
| Eric Bloom | 12/22/2006 | $100,000.00 |
| Charles Mosley | 12/22/2006 | $50,000.00 |
| Philip Bloom | 1/13/2007 | $80,000.00 |
| Charles Mosley | 3/8/2007 | $418,482.74 |
| Eric Bloom | 6/29/2007 | $50,000.00 |
| TOTAL: | | $723,482.74 |

133. On information and belief, Sentinel made additional transfers to or for the benefit of defendants, both within and prior to the one-year period preceding the commencement of Sentinel's bankruptcy case, that were characterized as bonus payments (together with the transfers identified in the preceding paragraph, the "Insider Bonus Payments").

134. Sentinel made the following transfers to the following recipients preceding the commencement of Sentinel's bankruptcy case, which were characterized as reimbursement of expenses:

| NAME | DATE OF PAYMENT | AMOUNT PAID |
|---|---|---|
| Philip Bloom | 9/6/2006 | $531.00 |
| Philip Bloom | 12/8/2006 | $531.00 |
| Eric Bloom | 3/1/2007 | $50.30 |
| Philip Bloom | 3/12/2007 | $968.40 |
| Philip Bloom | 6/12/2007 | $968.40 |
| TOTAL | | $3,049.10 |

135. On information and belief, Sentinel made additional transfers to or for the benefit of defendants, both within and prior to the one-year period preceding the commencement of

Sentinel's bankruptcy case, that were characterized as reimbursement of expenses (together with the transfers identified in the preceding paragraph, the "Insider Expense Reimbursements").

136.    On information and belief, Sentinel made additional transfers to or for the benefit of defendants, both within and prior to the one-year period preceding the commencement of Sentinel's bankruptcy case (the "Additional Transfers" and, collectively with the Insider Administrative Fee Payments, the Insider Dividends, the Insider Tax Payments, the Insider Withdrawals, the Insider Salary Payments, the Insider Bonus Payments and the Insider Expense Reimbursements, the "Insider Transfers").

137.    The Insider Transfers that were transferred to or for the benefit of defendant SFS also were transferred, directly or indirectly, to or for the benefit of SFS's 100% owner Philip M. Bloom Grantor Annuity Trust and Philip M. Bloom, both defendants herein.

138.    The Insider Transfers that were transferred to or for the benefit of defendant Philip M. Bloom Revocable Trust also were transferred, directly or indirectly, to or for the benefit of defendant Philip M. Bloom.

139.    The Insider Transfers that were transferred to or for the benefit of defendant Sybil Bloom Revocable Trust also were transferred, directly or indirectly, to or for the benefit of defendant Philip M. Bloom.

140.    The Insider Transfers that were transferred to or for the benefit of defendant Philip M. Bloom Remainder Trust also were transferred, directly or indirectly, to or for the benefit of defendant Philip M. Bloom.

141.    The Insider Transfers that were transferred to or for the benefit of defendant Fountainhead also were transferred, directly or indirectly, to or for the benefit of Fountainhead's 100% owner EB Trust 2005 and Eric A. Bloom, both defendants herein.

142.    The Insider Transfers that were transferred to or for the benefit of defendant Eric A. Bloom Living Trust also were transferred, directly or indirectly, to or for the benefit of defendant Eric A. Bloom.

## COUNT ONE

### Avoidance and Recovery of Fraudulent Transfers Pursuant to §§ 548(a)(1)(A) and 550(a) of the Bankruptcy Code

143.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

144.    The Insider Transfers constituted transfers of interests in Sentinel's property.

145.    The Insider Transfers were made, mediately or immediately, to or for the benefit of the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint.

146.    The Insider Transfers were made with the actual intent to hinder, delay, or defraud Sentinel's creditors.

147.    The Trustee may avoid all Insider Transfers made within the two years preceding the Petition Date pursuant to section 548(a)(1)(A) of the Bankruptcy Code.

148.    The Trustee may recover, for the benefit of the estate, the Insider Transfers or their value from the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint, as either (1) the initial transferee of the Insider Transfers or the entity for whose benefit the Insider Transfers were made, or (2) the immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: avoiding each of the Insider Transfers made within the two years preceding the Petition Date pursuant to section 548(a)(1)(A) of the Bankruptcy Code; ordering the return and recovery of the Insider

Transfers, or entering judgment against each defendant pursuant to section 550(a) of the Bankruptcy Code in the amount of the Insider Transfers made to or for the benefit of each such defendant; awarding the Trustee punitive damages in an amount to be determined by the Court, pre- and post-judgment interest, costs and attorneys' fees and expenses; and granting such other equitable relief as may be just and proper.

## COUNT TWO

### Avoidance and Recovery of Fraudulent Transfers Pursuant to 740 ILCS 160/5(a)(1) and 160/8(a), and §§ 544(b)(1) and 550(a) of the Bankruptcy Code

149.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

150.    The Insider Transfers constituted transfers of interests in Sentinel's property.

151.    The Insider Transfers were made, mediately or immediately, to or for the benefit of the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint.

152.    The Insider Transfers were made with actual intent to hinder, delay, or defraud Sentinel's creditors within the meaning of section 5 of the Illinois Uniform Fraudulent Transfer Act ("UFTA"), 740 ILCS 160/1 *et seq.*

153.    A creditor exists that could avoid the Insider Transfers, and could obtain further relief, pursuant to section 8(a) of the UFTA.

154.    Such creditor could obtain a judgment against each defendant for the value of the Insider Transfers received as described in this Complaint, as either (1) the first transferee of the asset or the person for whose benefit the Insider Transfers were made, or (2) a subsequent transferee, pursuant to section 9(b) of the UFTA.

155.    The Trustee may avoid the Insider Transfers pursuant to section 544(b)(1) of the Bankruptcy Code and may recover, for the benefit of the estate, the Insider Transfers or their value from the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint, as either (1) the initial transferee of the Insider Transfers or the entity for whose benefit the Insider Transfers were made, or (2) the immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: avoiding each of the Insider Transfers pursuant to 740 ILCS 160/8(a) and section 544(b)(1) of the Bankruptcy Code; ordering the return and recovery of the Insider Transfers, or entering judgment against each defendant pursuant to section 544(b)(1) and 550(a) of the Bankruptcy Code in the amount of the Insider Transfers made to or for the benefit of each such defendant; awarding the Trustee punitive damages in an amount to be determined by the Court, pre- and post-judgment interest, costs and attorneys' fees and expenses; and granting such other equitable relief as may be just and proper.

## COUNT THREE

### Avoidance and Recovery of Fraudulent Transfers Pursuant to §§ 548(a)(1)(A) and 550(a) of the Bankruptcy Code

156.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

157.    The Insider Transfers constituted transfers of interests in Sentinel's property.

158.    The Insider Transfers were made, mediately or immediately, to or for the benefit of the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint.

159. Sentinel received less than a reasonably equivalent value in exchange for such Insider Transfers.

160. Sentinel was insolvent on the dates that each of the Insider Transfers were made, or became insolvent as a result of each of the Insider Transfers.

161. At the time each of the Insider Transfers was made, Sentinel was engaged in business or a transaction, or was about to engage in business or a transaction, for which Sentinel's remaining property was unreasonably small capital.

162. At the time each of the Insider Transfers was made, Sentinel intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

163. The Trustee may avoid all Insider Transfers made within the two years preceding the Petition Date pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

164. The Trustee may recover, for the benefit of the estate, the Insider Transfers or their value from the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint, as either (1) the initial transferee of the Insider Transfers or the entity for whose benefit the Insider Transfers were made, or (2) the immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: avoiding each of the Insider Transfers made within the two years preceding the Petition Date pursuant to section 548(a)(1)(B) of the Bankruptcy Code; ordering the return and recovery of the Insider Transfers, or entering judgment against each defendant pursuant to section 550(a) of the Bankruptcy Code in the amount of the Insider Transfers made to or for the benefit of each such defendant; awarding the Trustee pre- and post-judgment interest, costs and attorneys' fees and expenses; and granting such other equitable relief as may be just and proper.

## COUNT FOUR

### Avoidance and Recovery of Fraudulent Transfers Pursuant to 740 ILCS 160/5(a)(2) and 160/8(a), and §§ 544(b)(1) and 550(a) of the Bankruptcy Code

165.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

166.    The Insider Transfers constituted transfers of interests in Sentinel's property.

167.    The Insider Transfers were made, mediately or immediately, to or for the benefit of the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint.

168.    The Insider Transfers were made by Sentinel without receiving reasonably equivalent value in exchange.

169.    At the time each of the Insider Transfers was made, Sentinel was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction.

170.    At the time each of the Insider Transfers was made, Sentinel intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they came due.

171.    An actual creditor exists who could avoid the Insider Transfers, and obtain further relief, pursuant to section 8(a) of the UFTA.

172.    Such creditor could obtain a judgment against each defendant for the value of the Insider Transfers received as described in this, as either (1) the first transferee of the asset or the person for whose benefit the Insider Transfers were made, or (2) a subsequent transferee, pursuant to section 9(b) of the UFTA.

173.    The Trustee may avoid the Insider Transfers pursuant to section 544(b)(1) of the Bankruptcy Code and may recover, for the benefit of the estate, the Insider Transfers or their value from the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint, as either (1) the initial transferee of the Insider Transfers or the entity for whose benefit the Insider Transfers were made, or (2) the immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: avoiding each of the Insider Transfers pursuant to 740 ILCS 160/8(a) and section 544(b)(1) of the Bankruptcy Code; ordering the return and recovery of the Insider Transfers, or entering judgment against each defendant pursuant to section 550(a) of the Bankruptcy Code in the amount of the Insider Transfers made to or for the benefit of each such defendant; awarding the Trustee pre- and post-judgment interest, costs and attorneys' fees and expenses; and granting such other equitable relief as may be just and proper.

## COUNT FIVE

### Avoidance and Recovery of Fraudulent Transfers Pursuant to 740 ILCS 160/6(a) and 160/8(a), and §§ 544(b)(1) and 550(a) of the Bankruptcy Code

174.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

175.    The Insider Transfers constituted transfers of interests in Sentinel's property.

176.    The Insider Transfers were made, mediately or immediately, to or for the benefit of the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint.

177.    The Insider Transfers were made by Sentinel without receiving reasonably equivalent value in exchange.

178.    Sentinel was insolvent at the time each of the Insider Transfers was made, or became insolvent as a result of each of the Insider Transfers.

179.    An actual creditor exists who could avoid the Insider Transfers, and obtain further relief, pursuant to section 8(a) of the UFTA.

180.    Such creditor could obtain a judgment against each defendant for the value of the Insider Transfers received as described in this Complaint, as either (1) the first transferee of the asset or the person for whose benefit the Insider Transfers were made, or (2) a subsequent transferee, pursuant to section 9(b) of the UFTA.

181.    The Trustee may avoid the Insider Transfers pursuant to section 544(b)(1) of the Bankruptcy Code and may recover, for the benefit of the estate, the Insider Transfers or their value from the defendants that received the Insider Transfers or benefited therefrom as described in this Complaint, as either (1) the initial transferee of the Insider Transfers or the entity for whose benefit the Insider Transfers were made, or (2) the immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: avoiding each of the Insider Transfers pursuant to 740 ILCS 160/8(a) and section 544(b)(1) of the Bankruptcy Code; ordering the return and recovery of the Insider Transfers, or, entering judgment against each defendant pursuant to 740 ILCS 160/9(b) and section 550(a) of the Bankruptcy Code in the amount of the Insider Transfers made to or for the benefit of each such defendant; awarding the Trustee pre- and post-judgment interest, costs and attorneys' fees and expenses; and granting such other equitable relief as may be just and proper.

## COUNT SIX

### Avoidance and Recovery of Non–Ordinary Course Payments to Insiders under Employment Contracts as Fraudulent Transfers Pursuant to §§ 548(a)(1)(B)(ii)(IV) and 550(a) of the Bankruptcy Code

182.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

183.    The Insider Salary Payments, Insider Bonus Payments and Insider Expense Reimbursements (collectively, the "Employment Contract Payments") constituted transfers of interests in Sentinel's property.

184.    The Employment Contract Payments were made, mediately or immediately, to or for the benefit of the defendants that received the Employment Contract Payments or benefited therefrom as described in this Complaint.

185.    Sentinel received less than reasonably equivalent value in exchange for the Employment Contract Payments.

186.    At the time of the Employment Contract Payments, each defendant to whom, or for whose benefit, Sentinel made the Employment Contract Payments was an "insider" of Sentinel within the meaning of the Bankruptcy Code.

187.    The Employment Contract Payments were made under employment contracts between Sentinel and the defendants that received such payments.

188.    The Employment Contract Payments were not made in the ordinary course of Sentinel's business.

189.    The Trustee may avoid the Employment Contract Payments pursuant to section 548(a)(1)(B)(ii)(IV) of the Bankruptcy Code.

190.    The Trustee may recover, for the benefit of the estate, the Employment Contract Payments or their value from the defendants that received the Employment Contract Payments or benefited therefrom as described in this Complaint, as either (1) the initial transferee of the Employment Contract Payments or the entity for whose benefit the Employment Contract Payments were made, or (2) the immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: avoiding each of the Employment Contract Payments made within the two years preceding the Petition Date pursuant to section 548(a)(1)(B)(ii)(IV) of the Bankruptcy Code; ordering the return and recovery of the Employment Contract Payments, or entering judgment against each defendant pursuant to section 550(a) of the Bankruptcy Code in the amount of the Employment Contract Payments made to or for the benefit of each such defendant; awarding the Trustee pre- and post-judgment interest, costs and attorneys' fees and expenses; and granting such other equitable relief as may be just and proper.

## COUNT SEVEN

### Avoidance and Recovery of Preferential Transfers to Insiders Pursuant to §§ 547(b) and 550(a) of the Bankruptcy Code

191.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

192.    The Insider Transfers specifically identified in paragraphs 118, 121, 126, 128, 130, and 134 of this Complaint (the "One-Year Insider Transfers") constituted transfers of interests in Sentinel's property.

193.    The One-Year Insider Transfers were made, mediately or immediately, to or for the benefit of the defendants that received the One-Year Insider Transfers or benefited therefrom as described in this Complaint.

194.    The One-Year Insider Transfers were made on account of antecedent debt owed by the Debtor before the One-Year Insider Transfers were made.

195.    The One-Year Insider Transfers were made while Sentinel was insolvent.

196.    At the time of the One-Year Insider Transfers, each defendant to whom, or for whose benefit, the One-Year Insider Transfers were made was an "insider" of Sentinel within the meaning of section 101(31) of the Bankruptcy Code.

197.    The One-Year Insider Transfers were made within one year before the Petition Date.

198.    The One-Year Insider Transfers enabled each defendant to receive more than each defendant would receive if this case was a case under chapter 7 of the Bankruptcy Code, the One-Year Insider Transfers had not been made, and each defendant received payment in such chapter 7 case to the extent provided by the Bankruptcy Code.

199.    The Trustee may avoid the One-Year Insider Transfers pursuant to section 547(b) of the Bankruptcy Code.

200.    The Trustee may recover, for the benefit of the estate, the One-Year Insider Transfers or their value from the defendants that received the One-Year Insider Transfers or benefited therefrom as described in this Complaint, as either (1) the initial transferee of the One-Year Insider Transfers or the entity for whose benefit the One-Year Insider Transfers were made, or (2) the immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: avoiding each of the One-Year Insider Transfers pursuant to section 547(b) of the Bankruptcy Code; ordering the return and recovery of the One-Year Insider Transfers, or entering judgment against each defendant pursuant to section 550(a) of the Bankruptcy Code in the amount of the One-Year Insider Transfers made to or for the benefit of each such defendant; awarding the Trustee pre- and post-judgment interest, costs and attorneys' fees and expenses; and granting such other equitable relief as may be just and proper.

## COUNT EIGHT

### Avoidance and Recovery of Preferential Transfers to Insiders
### Pursuant to the Illinois UFTA, 740 ILCS 160/6(b) and 160/8(a),
### and §§ 544(b)(1) and 550(a) of the Bankruptcy Code

201.    Plaintiff restates and realleges paragraphs 1 through 142 and 192 of this Complaint as though fully set forth herein.

202.    The One-Year Insider Transfers were made, mediately or immediately, to or for the benefit of the defendants that received the One-Year Insider Transfers or benefited therefrom as described in this Complaint.

203.    The One-Year Insider Transfers were made on account of antecedent debts.

204.    At the time of each of the One-Year Insider Transfers, each recipient was an "insider" of Sentinel within the meaning of the UFTA.

205.    Sentinel was insolvent at the time each of the One-Year Insider Transfers were made.

206.    Each recipient had reasonable cause to believe that Sentinel was insolvent at the time each of the One-Year Insider Transfers was made.

207.    An actual creditor exists who could avoid the One-Year Insider Transfers, and obtain further relief, pursuant to section 8(a) of the UFTA.

208.    Such creditor could obtain a judgment against each defendant for the value of the One-Year Insider Transfers received as described in this Complaint, as either (1) the first transferee of the asset or the person for whose benefit the One-Year Insider Transfers were made, or (2) a subsequent transferee, pursuant to section 9(b) of the UFTA.

209.    The Trustee may avoid the One-Year Insider Transfers pursuant to section 544(b)(1) of the Bankruptcy Code and may recover, for the benefit of the estate, the One-Year Insider Transfers or their value from the defendants that received the One-Year Insider Transfers or benefited therefrom as described in this Complaint, as either (1) the initial transferee of the One-Year Insider Transfers or the entity for whose benefit the One-Year Insider Transfers were made, or (2) the immediate or mediate transferee of such initial transferee pursuant to section 550(a) of the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order: avoiding each of the One-Year Insider Transfers pursuant to 740 ILCS 160/8(a) and section 544(b)(1) of the Bankruptcy Code; ordering the return and recovery of the One-Year Insider Payments, or entering judgment against each defendant pursuant to 740 ILCS 160/9(b) and section 550(a) of the Bankruptcy Code in the amount of the One-Year Insider Transfers made to or for the benefit of each such defendant;  awarding the Trustee pre- and post-judgment interest, costs and attorneys' fees and expenses; and granting such other equitable relief as may be just and proper.

## COUNT NINE

**Breach of Fiduciary Duty**
**(Sentinel Officers, Directors and Controlling Shareholders)**

210.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

211.    Sentinel was insolvent or in the zone of insolvency and unable to pay its debts as they came due at all times relevant to this Complaint.

212.    At all times relevant to this Complaint, Philip Bloom, Eric Bloom and Charles Mosley were officers, directors and/or controlling shareholders of Sentinel.

213.    As directors, officers and controlling shareholders of Sentinel, Philip Bloom, Eric Bloom and Charles Mosley owed a fiduciary duty of loyalty to Sentinel and its creditors.

214.    As directors, officers and controlling shareholders of Sentinel, Philip Bloom, Eric Bloom and Charles Mosley owed a fiduciary obligation to act with due care and to deal honestly and fairly with Sentinel and its creditors.

215.    Philip Bloom, Eric Bloom and Charles Mosley breached their fiduciary duties to Sentinel and it creditors, by engaging in the conduct described with particularity in the Complaint, fraudulently authorizing the Insider Transfers, and by taking other actions which benefited themselves to the prejudice and detriment of Sentinel and its creditors.

216.    As a proximate result of Philip Bloom, Eric Bloom and Charles Mosley's breaches of their fiduciary duties, Sentinel has been damaged in an amount exceeding Three Hundred Fifty Million Dollars ($350,000,000.00).

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Philip Bloom, Eric Bloom and Charles Mosley, jointly and severally, in an amount exceeding Three Hundred Fifty Million Dollars ($350,000,000.00), plus punitive

damages in an amount to be determined by the Court, interest, costs and attorneys' fees, and grant such other equitable relief as may be just and appropriate.

## COUNT TEN

### Knowing Participation in Breach of Fiduciary Duty

217.    Plaintiff restates and realleges 1 through 142, and 211 through 216, of this Complaint as though fully set forth herein.

218.    The defendants (acting by, through or in concert with Philip Bloom, Eric Bloom and Charles Mosley) knowingly participated in, assisted and benefited from Philip Bloom's, Eric Bloom's and Charles Mosley's breaches of their fiduciary duties to Sentinel.

219.    Sentinel has been damaged as a result of each of the defendant's participation in Philip Bloom's, Eric Bloom's, and Charles Mosley's breaches of their fiduciary duties.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against each of the defendants in an amount exceeding Three Hundred Fifty Million Dollars ($350,000,000.00), plus punitive damages in an amount to be determined by the Court, interest, costs and attorneys' fees, and grant such other equitable relief as may be just and appropriate.

## COUNT ELEVEN

### Breach of Fiduciary Duty (SIG, SFS and SMI Officers, Directors and Controlling Shareholders)

220.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

221.    At all times relevant to this Complaint, Philip Bloom and Eric Bloom were controlling shareholders, directors and officers of SIG, SFS and SMI.

222.    SIG, SFS and SMI each were insolvent and unable to pay their debts as they came due at all times relevant to this Complaint.

223.    As directors, officers and controlling shareholders of SIG, SFS and SMI, Philip Bloom and Eric Bloom each owed a fiduciary duty of loyalty to SIG, SMI, and Sentinel creditors, including Sentinel.

224.    As directors, officers and controlling shareholders of SIG, SFS and SMI, Philip Bloom and Eric Bloom owed a fiduciary obligation to act with due care and to deal honestly and fairly with SIG, SFS and SMI's creditors, including Sentinel.

225.    Philip Bloom and Eric Bloom breached their fiduciary duties to SIG, SFS and SMI's creditors, including Sentinel, by authorizing the March 2007 Dividends to or for the benefit of the other defendants, and by taking other actions which benefited themselves to the prejudice and detriment of SIG, SFS and SMI's creditors, including the 2007 Preferred Share Redemption.

226.    As a proximate result of Philip Bloom's and Eric Bloom's breaches of their fiduciary duties, Sentinel has been damaged in the amount exceeding Three Hundred Fifty Million Dollars ($350,000,000.00).

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Philip Bloom and Eric Bloom, jointly and severally, in an amount exceeding Three Hundred Fifty Million Dollars ($350,000,000.00), plus punitive damages in an amount to be determined by the Court, interest, costs and attorneys' fees, and grant such other equitable relief as may be just and appropriate.

## COUNT TWELVE

### Knowing Participation in Breach of Fiduciary Duty

227.    Plaintiff restates and realleges paragraphs 1 through 142, and 221 through 226, of this Complaint as though fully set forth herein.

228.    The defendants (acting by, through or in concert with Philip Bloom and Eric Bloom) knowingly participated in, assisted and benefited from Philip Bloom, Eric Bloom and Charles Mosley's breaches of their fiduciary duties to SIG, SFS and SMI.

229.    Sentinel has been damaged as a result of each of the defendant's participation in Philip Bloom's and Eric Bloom's breaches of their fiduciary duties.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against each of the defendants in an amount exceeding Three Hundred Fifty Million Dollars ($350,000,000.00), plus punitive damages in an amount to be determined by the Court, interest, costs and attorneys' fees, and grant such other equitable relief as may be just and appropriate.

## COUNT THIRTEEN

### Unlawful Dividend (Sentinel)

230.    Plaintiff restates and re-alleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

231.    Each of the Insider Dividends constituted a distribution to shareholders, as that term is used in Section 9.10 of the Illinois Business Corporations Act of 1983, 805 ILCS 5/1.01 et seq. (the "BCA").

232.    On information and belief, one or more of the other Insider Transfers de facto constituted a distribution to shareholders (together with the Insider Dividends, the "Dividends").

233.    Philip Bloom and Eric Bloom authorized and directed each of the Dividends.

234.    The Dividends were made at a time when Sentinel was insolvent, or was rendered insolvent thereby.

235.    After giving effect to the Dividends, the net assets of Sentinel were less than zero.

236.    Pursuant to 805 ILCS 5/9.10(c), Philip Bloom and Eric Bloom are liable for, and required to repay, the Dividends, which were unlawful.

WHEREFORE, the Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Philip Bloom and Eric Bloom, jointly and severally, in the amount of all Insider Transfers shown at trial to be distributions to shareholders (plus interest, costs and attorneys' fees), and grant such other equitable relief as may be just and appropriate.

## COUNT FOURTEEN

### Unlawful Dividend (SIG and SFS)

237.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

238.    The March 2007 Dividend constituted a distribution to shareholders, as that term is used in Section 9.10 of the BCA.

239.    The 2007 Preferred Shareholder Redemptions constituted a distribution to shareholders, as that term is used in the BCA.

240.    On information and belief, all other transfers made by SIG, and SFS, to or for the benefit of any of the defendants, de facto constituted a distribution to shareholders (together with the transfers identified in paragraphs 238 and 239, the "SIG and SFS Dividends").

241.    Philip Bloom and Eric Bloom authorized and directed each of the SIG and SFS Dividends.

242.    The SIG and SFS Dividends each were made at a time when each of SIG and SFS were insolvent, or were rendered insolvent thereby.

243.    After giving effect to the SIG and SFS Dividends, the net assets of each of SIG and SFS were less than zero.

244.    Pursuant to 805 ILCS 5/9.10(c), Philip Bloom and Eric Bloom are liable for and required to repay the SIG and SFS Dividends, which were unlawful.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against Philip Bloom and Eric Bloom, jointly and severally, in the amount of all SIG and SFS Dividends shown at trial to be distributions to shareholders (plus interest, costs and attorneys' fees), and grant such other equitable relief as may be just and appropriate.

## COUNT FIFTEEN

### Civil Conspiracy

245.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

246.    The defendants conspired together and with other persons and entities to defraud Sentinel and its creditors, in order to gain access to funds rightfully belonging to Sentinel or its creditors.

247.    As set forth above with particularity in this Complaint, the defendants engaged in numerous acts of fraud in furtherance of their conspiracy to wrongfully gain access to the assets of Sentinel and its creditors.

248.    As a proximate result of the defendants' conspiracy to defraud Sentinel and its creditors, Sentinel has been damaged in an amount exceeding Three Hundred Fifty Million Dollars ($350,000,000.00).

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against each of the defendants in an amount exceeding Three Hundred Fifty Million Dollars ($350,000,000.00), plus punitive damages in an amount to be determined by the Court, interest, costs and attorneys' fees, and grant such other equitable relief as may be just and appropriate.

## COUNT SIXTEEN

### Unjust Enrichment

249.   Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

250.   As a result of the numerous breaches of fiduciary duties owing to Sentinel and its creditors and the fraud perpetuated by them, the defendants wrongfully received direct and indirect benefits from Sentinel which should have inured to the benefit of Sentinel and its creditors.

251.   The defendants have been unjustly enriched, and equity requires that all defendants disgorge and pay the amount by which they have been unjustly enriched.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in favor of Plaintiff and against all defendants, jointly and severally, in the amount of all Insider Transfers (plus interest, costs and attorneys' fees), and grant such other equitable relief as may be just and appropriate.

## COUNT SEVENTEEN

### Equitable Subordination of Claims

252.   Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

253.    As set forth above, prior to the Petition Date defendants engaged in transactions with or involving Sentinel solely for their own benefit and gain, and to the extreme detriment of Sentinel and its creditors.

254.    Sentinel and its creditors have been damaged in an amount exceeding $350,000,000.00 as a proximate and foreseeable result of the conduct of the defendants.

255.    As a result of the conduct of the defendants, good cause exists to subordinate payment of all claims asserted by defendants to a level below all other creditors.

256.    Subordination of the defendants' claims is not inconsistent with the Bankruptcy Code.

WHEREFORE, Plaintiff respectfully requests that this Court enter an order subordinating, pursuant to 11 U.S.C. § 510(c), all claims asserted by defendants to a level below all other creditors, and granting such other and further relief as this Court deems equitable and just.

## COUNT EIGHTEEN

### Disallowance of Claims

257.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

258.    Sentinel's schedules and financial records indicate that one or more of the defendants may be a creditor of Sentinel.

259.    One or more of the defendants has or may file in the future proofs of claim in Sentinel's bankruptcy case.

260.    The defendants have failed to turn over to Plaintiff property of the Debtor's estate which is recoverable by the Plaintiff, namely the amounts demanded in Counts One through Sixteen above.

261.    Pursuant to Section 502(d) of the Bankruptcy Code, each claim asserted by a defendant must be disallowed because property of the Debtor's estates is recoverable from such defendant and such defendant has not turned over that property to Plaintiff.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment disallowing each and every claim asserted by any of the defendants against the Debtor, and for such other relief as this Court deems equitable and just.

### COUNT NINETEEN

### Injunctive Relief

262.    Plaintiff restates and realleges paragraphs 1 through 142 of this Complaint as though fully set forth herein.

263.    Plaintiff seeks preliminary and permanent injunctive relief prohibiting and preventing defendants from making further fraudulent transfers or dissipating any assets received as Insider Transfers.

264.    Without issuance of an injunction, Plaintiff will suffer irreparable harm and have no adequate remedy at law because he will be unable to recover those assets for the benefit of Sentinel and its creditors.

WHEREFORE, Plaintiff respectfully requests that this Court enter an injunction prohibiting and preventing defendants from making further fraudulent transfers or dissipating any assets received as Insider Transfers, and further equitable relief as may be just and proper.

Dated:  October 11, 2007

Respectfully submitted,

FREDERICK J. GREDE, not individually but
as Chapter 11 Trustee of Sentinel Management
Group, Inc.

By:_____

One of his attorneys

J. Kevin McCall (ARDC # 3125685)
Catherine L. Steege (ARDC # 6183529)
Chris C. Gair (ARDC # 6190781)
Vincent E. Lazar (ARDC # 6204916)
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL  60611
Phone: (312) 222-9350
Facsimile: (312) 527-0484