**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
**HENRY SHATKIN, on behalf of himself and**     :     **Civ. No. 07 Civ. 7928 (PAC)**
**all others similarly situated,**                       :
                                                             :     **Jury Trial Demanded**
                        Plaintiff,                       :
                                                             :
        - against -                                      :
                                                             :     **PLAINTIFF'S OPPOSITION TO**
**THE BANK OF NEW YORK MELLON**                 :     **DEFENDANTS' MOTION TO**
**CORPORATION and THE BANK OF**                 :     **DISMISS OR, IN THE**
**NEW YORK**                                           :     **ALTERNATIVE, TO STAY**
                                                             :
                        Defendants.                      :
                                                             :
-------------------------------------------------------------x

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................i

I.  INTRODUCTION.........................................................................................................1

II.  BACKGROUND AND ALLEGATIONS OF THE COMPLAINT ........................................3

III. ARGUMENT ...............................................................................................................6

    A.  BONY's Motion to Dismiss Should Be Denied Because BONY Fundamentally
        Mischaracterizes the Allegations of Plaintiff's Complaint...................................7

    B.  The Complaint States Valid Custodian Malfeasance Claims Against BONY.................7

        1.  BONY is Liable for Negligence .....................................................................8

        2.  BONY is Liable for Conversion ..................................................................11

        3.  BONY is Liable for Breach of Fiduciary Duty.........................................12

    C.  U.C.C. Section 8-503(e) Does Not Protect BONY from the Custodian Malfeasance
        Claims Alleged in the Complaint.........................................................................13

        1.  The Facts in the Complaint Do Not Establish that Sentinel Was a "Securities
            Intermediary"...........................................................................................14

        2.  The Facts in the Complaint Do Not Establish that BONY
            Was a "Purchaser" of Assets .................................................................16

        3.  The Facts in the Complaint Do Not Establish that BONY
            "Obtained Control" of Assets ...............................................................17

        4.  The Complaint Adequately Alleges that BONY Colluded With Sentinel ...............17

    D.  This Case Should Not Be Stayed.........................................................................19

        1.  U.C.C. Section 8-503(d) is Inapplicable .....................................................20

        2.  Plaintiff Should be Permitted to Prosecute Claims that Are
            Independent of the Trustee's .................................................................21

    E.  The Bank of New York Mellon Corporation is a Proper Party .......................................23

    F.  If the Complaint is Dismissed, Leave to Amend Should Be Granted ............................23

IV. CONCLUSION ..........................................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112..............................................12

*In re Bennett Funding Group, Inc.*, 336 F.3d 94 ....................................................................21

*Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955.........................................................7

*Brierwood Shoe Corp. v. Sears, Roebuck and Co.*, 479 F. Supp. 563.........................................23

*Bullmore v. Banc of America Sec. LLC*, 485 F. Supp. 2d 464......................................................13

*Cleveland v. Caplaw Enterprises*, 448 F.3d 518 ...................................................................7

*E & L Consulting, Ltd. v. Doman Industrial*, 472 F.3d 23 .........................................................18

*Erickson v. Pardus*, __ U.S. __, 127 S.Ct. 2197..................................................................7

*Filner v. Shapiro*, 633 F.2d 139.......................................................................................11

*Glendora v. Malone*, 917 F. Supp. 224................................................................................23

*In re Granite Partners L.P.*, 194 B.R. 318 .........................................................................22

*Henneberry v. Sumitomo Corp. of America,* (415 F. Supp. 2d 423)............................................22

*Johnny's Ent., Inc. v. Prudential Secs., Inc.*, 162 Fed. Appx. 239 ...........................................15

*In re Knox*, 477 N.E.2d 448 ...........................................................................................9

*Koch Refining v. Farmers Union Central Exchange, Inc.*, 831 F.2d 1339....................................21

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 ..................................................................8-10, 13, 19

*Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449 ............................................................22

*Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397 ..................................................................12

*Pereira v. United Jersey Bank, N.A.*, 201 B.R. 644................................................................12

*Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F.Supp.2d 436.............................................23

*Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F.Supp.2d 411.............................................11

*SCS Commc'ns, Inc. v. Herrick Co.*, 360 F.3d 329..................................................................12

*SEC v. Credit Bancorp, Ltd.*, 386 F.3d 438 ................................................................15, 19

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 ..........................................21

*St. Paul Fire and Marine Insurance Co. v. Pepsico, Inc.*, 884 F.2d 688 ......................21

*Steinberg v. Buczynski*, 40 F.3d 890 ............................................................................21

*Thyroff v. Nationwide Mutual Insurance Co.*, 460 F.3d 400 ........................................11

*Vincel v. White Motor Corp.*, 521 F.2d 1113 ...............................................................22

## STATE CASES

*Ahles v. Aztec Enterprises, Inc.*, 502 N.Y.S.2d 821 .....................................................11

*Daly v. Atlantic Bank of New York*, 614 N.Y.S.2d 418 ..................................................9

*Drage v. First Concord Securities, Ltd.*, 707 N.Y.S.2d 782 ......................15-16, 18-19

*Grace v. Sterling, Grace & Co.*, 289 N.Y.S.2d 632 .......................................................9

*Kronisch v. Howard Sav. Institute*, 392 A.2d 178 .......................................................12

*New York v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702 ........................................11

*Norwest Mortgage, Inc. v. Dime Sav. Bank of New York*, 721 N.Y.S.2d 94 ................11

*Schiff v. RKO Pictures Corp.*, 283 A.D. 659 ...............................................................23

*Sporn v. MCA Records, Inc.*, 448 N.E.2d 1324 ...........................................................11

*Vigilant Insurance Co. of America v. Housing Authority*, 660 N.E.2d 1121................11

## FEDERAL STATUTES

17 C.F.R. § 1.20 ...................................................................................................4-6, 10-11

17 C.F.R. § 275.206(4)-2 ................................................................................................4

Fed. R. Civ. P. 8 .............................................................................................................7

Fed. R. Civ. P.12(b)(6)....................................................................................................7

Fed. R. Civ. P. 15(a) .....................................................................................................23

## STATE STATUTES

N.Y. U.C.C. § 1-201 ...........................................................................................16

N.Y. U.C.C. § 8-102 .................................................................................. 8, 14-15

N.Y. U.C.C. § 8-106 ...........................................................................................17

N.Y. U.C.C. § 8-503 ..................................................................................... *passim*

N.Y. U.C.C. § 8-504 .............................................................................................8

N.Y. U.C.C. § 8-506 .............................................................................................9

N.Y. U.C.C. § 8-507 .............................................................................................9

## MISCELLANEOUS

U.C.C. Article 8 "Legislative intent and declaration," 1997 N.Y. ALS 566 ................................18

Plaintiff Henry Shatkin respectfully submits this memorandum in opposition to Defendants' Motion to Dismiss or, in the Alternative, to Stay (the "Motion"), filed by Defendants Bank of New York Mellon Corporation and Bank of New York (collectively, "Defendants" or "BONY").

## I.     INTRODUCTION

BONY's Motion fundamentally mischaracterizes Plaintiff's First Amended Class Action Complaint (the "Complaint"). As the Complaint makes plain, BONY wore more than one "hat" when dealing with Sentinel Management Group, Inc. ("Sentinel") and the customer accounts at issue. To be sure, BONY was a lender to Sentinel, but BONY also served in the separate role of custodian for certain segregated accounts that were managed by Sentinel but owned by Sentinel's customers (the "Segregated Accounts"). The essence of the Complaint is that BONY, while acting as custodian, violated duties it owed directly to Plaintiff and the putative class he seeks to represent (the "Class"), thereby allowing and effecting the diversion of hundreds of millions of dollars in assets belonging to the Class. Because of its misconduct as a custodian, BONY is liable for damages to the Class under the theories set forth in the Complaint – negligence (Count I), conversion (Count II), and breach of fiduciary duty (Count III) – and the Complaint states claims on which relief can be granted.

Brushing aside its custodial responsibilities, BONY argues that U.C.C. § 8-503(e)[1] protects it from suit because, at least according to BONY, Sentinel was a "securities intermediary," BONY was a "purchaser" of the Class's assets, BONY "gave value" for them, BONY "obtained control" of them, and BONY did not "collude" with Sentinel. BONY's argument fails at the outset because Section 8-503(e) simply does not apply to damages claims based on custodian malfeasance. Indeed,

---

[1]  All references to "U.C.C. § __" refer to New York's enacted version of the Uniform Commercial Code, cited as "N.Y. U.C.C. § __".

BONY's argument borders on the absurd, as is apparent if one contemplates a hypothetical scenario that varies only slightly from what actually happened. One can imagine a case in which BONY, acting as custodian of the Class's Segregated Accounts, transferred assets out of those accounts and into a different Sentinel-owned account maintained at a different financial institution. If BONY negligently allowed the Class's assets to disappear into a different Sentinel-owned account as to which some other entity asserted a security interest, or BONY converted the Class's assets for the benefit of Sentinel and some other alleged lienholder, or BONY breached its fiduciary duties to the Class by placing the interests of Sentinel and some other alleged lienholder ahead of the Class's interests, BONY obviously would find no solace in Section 8-503(e). Contrary to BONY's suggestion, BONY's liability to the Class for such custodial lapses cannot be excused by the fact that BONY actually committed wrongful acts for its own ultimate benefit rather than for some other alleged lienholder.

Even if Section 8-503(e) applied to damages claims arising from custodian malfeasance, BONY's argument would fail because BONY relies on dubious factual assumptions that do not follow from, and often are inconsistent with, the Complaint. For example, although BONY misquotes the Complaint to suggest otherwise, the Complaint does not allege facts showing that Sentinel was a "securities intermediary." Sentinel cannot be deemed a securities intermediary because, as alleged in the Complaint, Sentinel did not hold the assets at issue. Similarly, the Complaint does not allege facts showing that BONY was a "purchaser" of the assets and "obtained control" of them, or that BONY "did not act in collusion with the securities intermediary in violating the securities intermediary's obligations." Although the Complaint alleges that on August 17, 2007, BONY announced an intention to seize and sell the Class's assets, the Complaint also alleges that Sentinel filed for bankruptcy protection that same day. It is apparent from a

subsequently entered stipulated bankruptcy court order, which BONY attached to its Motion papers, that BONY has therefore never been able to "take" the assets within the meaning of the U.C.C. – as required in order to qualify as a "purchaser" – and that BONY has not been able to "obtain control" of them. Most significantly, while BONY blithely asserts that it "is not alleged to have acted in collusion with Sentinel," the Complaint actually details egregious collusion by BONY and Sentinel.

BONY's alternative request for a stay also should be denied. The claims asserted here are based on BONY's misconduct as custodian and its failure to carry out duties owed to Plaintiff and the Class. Under applicable bankruptcy and non-bankruptcy law, such claims belong exclusively to Plaintiff and the Class. The claims do not belong to Sentinel's bankruptcy Trustee, and the Trustee apparently is not asserting them, nor could he if he wanted to. No judicial efficiency or other benefit would be gained by staying this action in favor of subsequently filed lawsuits involving different claims and issues.

## II.    BACKGROUND AND ALLEGATIONS OF THE COMPLAINT

This case arises from BONY's violation of its basic duties as an asset custodian. Sentinel was an investment adviser that managed investments for various clients, including institutional and individual investors. FAC ¶ 2.[2] An important safeguard for potential Sentinel advisory clients was that, as required under federal law, all investor funds were to be held by a third-party custodian to ensure that Sentinel could not pilfer, encumber or otherwise misappropriate the assets belonging to the investors. FAC ¶ 28. Under rules imposed by the SEC and CFTC, Sentinel had to engage the services of a "qualified custodian" to "maintain[] those funds and securities," with such assets to be held either in "a separate account for each client under that client's name" or in "accounts that

---

[2]  All references to "FAC ¶ __" are to the First Amended Class Action Complaint in this action, filed on October 3, 2007.

contain only [the] clients' funds and securities, under [Sentinel's] name as agent or trustee for the clients." *See* 17 C.F.R. § 275.206(4)-2 (SEC regulations); *see also* 17 C.F.R. § 1.20 (CFTC regulations) and FAC ¶¶ 21, 24, 28. BONY is one of the largest and most sophisticated custodian banks in the world, with more than $20 trillion in assets under custody or administration; as such, it was fully aware of federally-imposed asset-segregation requirements when it undertook to serve as custodian of the assets belonging to the Class. FAC ¶¶ 24-26, 28.

BONY maintained three Segregated Accounts (known as "SEG 1," "SEG 2" and "SEG 3") that held assets belonging to Plaintiff and the Class. FAC ¶ 21. Plaintiff and the Class shared in the profits and losses of the accounts on a pro-rata basis. FAC ¶ 22. Sentinel managed the account investments but was prohibited from using account assets for its own benefit. FAC ¶¶ 23-24.

Plaintiff and the Class invested in the Segregated Accounts by forwarding checks or making wire transfers directly to BONY in New York City, rather than by making payments to Sentinel. FAC ¶ 25. Investors also compensated BONY for its custodial services, and BONY periodically took payments by making direct withdrawals from the Segregated Accounts. *Id.*

BONY also maintained custody over another account (the "House Account") that contained assets belonging to Sentinel. FAC ¶ 32. Assets in the House Account allegedly were pledged by Sentinel to BONY as collateral for a line of credit that BONY extended to Sentinel.[3] FAC ¶ 33. Beginning in at least 2004, with the assistance and/or acquiescence of BONY, Sentinel employed a covert leveraging program under which assets belonging to Plaintiff and the Class were transferred from the Segregated Accounts into Sentinel's House Account and used as purported security for huge loans extended by BONY to Sentinel. FAC ¶¶ 5-7.

---

[3] Plaintiff notes the existence of a dispute over whether BONY properly perfected its alleged lien in House Account assets.

In the first paragraph of its "Statement of Facts," BONY repeatedly refers to its role as a provider of clearing services. Memorandum of Law in Support of Defendants' Motion to Dismiss or, in the Alternative, to Stay ("Def. Mem.") at 2. One page later, BONY falsely states that Plaintiff did not allege that BONY knew that Sentinel lacked authority to transfer to itself assets owned by the Class. *Id*. at 3, fn.1. The misleading implication of these passages is that BONY merely cleared routine securities trades as directed by Sentinel. In fact, Plaintiff's claims have nothing to do with BONY's alleged role clearing securities transactions; Plaintiff has alleged that, as a sophisticated custodian, BONY knew or should have known that the asset transfers out of the Segregated Accounts into Sentinel's own account were improper. *See* FAC ¶¶ 29, 32-33.

In essence, as the Complaint alleges, BONY disregarded its duties as custodian to allow Sentinel to use money belonging to the Class to make big bets on the credit markets for Sentinel's own benefit. FAC ¶¶ 29-31. From May 2007 through August 13, 2007, the credit and bond markets declined precipitously. FAC ¶ 7. Sentinel tried to recover by making even more bets in even riskier securities, and escalated its leverage program by improperly shifting hundreds of millions of dollars in additional client assets from Segregated Accounts to its own House Account. FAC ¶¶ 7, 43. These unauthorized asset transfers were all executed by BONY, which, as a sophisticated custodian, knew or should have known that the purpose of segregating the Segregated Accounts was to prevent such co-mingling of Sentinel's investments with the investments of its customers. FAC ¶ 32.

BONY's acts and omissions as custodian directly resulted in the depletion of Sentinel customer accounts that had been entrusted to BONY for safekeeping. *Id*. By August 13, 2007, BONY and Sentinel had drained the Segregated Accounts of most of their assets. FAC ¶¶ 9, 35.

5

The asset transfers benefited not only Sentinel but BONY, which saw the value of its alleged collateral in the House Account rise while the value of the Segregated Accounts fell.  FAC ¶ 33.  As the Complaint explains, BONY permitted its own financial interests as Sentinel's lender to take precedence over BONY's duties to Plaintiff and the Class.  *Id*.

On August 17, 2007, BONY sent Sentinel a letter stating that BONY planned to sell at auction hundreds of millions of dollars in assets in the House Account – including assets owned by Plaintiff and the Class.  FAC ¶ 39.  This letter was sent on the letterhead of Bank of New York Mellon and signed by a Managing Director of the Bank of New York.  *Id*.  That same day, Sentinel filed for bankruptcy protection.  FAC ¶ 40.

On December 13, 2007, the bankruptcy court presiding over Sentinel's bankruptcy case entered a stipulated order, which is attached to BONY's Motion papers, permitting Sentinel's chapter 11 bankruptcy Trustee (not BONY) to sell the assets in the House Account, without prejudice to any party's claimed rights to the sale proceeds, and with such proceeds to be deposited in a new segregated account for future distribution pursuant to future bankruptcy court orders.  *See* Declaration of Imtiaz A. Siddiqui, dated March 28, 2008 ("Siddiqui Dec."), Ex. A at ¶¶ 1, 7, 11.

## III.    ARGUMENT

Plaintiff has stated valid claims against BONY for damages resulting from BONY's malfeasance as a custodian.  Only Sentinel's investors have standing to bring such claims.  Acting as a lender, BONY may or may not have established a valid security interest in assets contained in Sentinel's House Account, but Plaintiff is not asking the Court to resolve that issue in this case. Regardless of how that issue ultimately is resolved by the Sentinel bankruptcy court, BONY still will be liable to Plaintiff and the Class for abdicating its custodial duties.  This case should proceed.

### A.    BONY's Motion to Dismiss Should Be Denied Because BONY Fundamentally Mischaracterizes the Allegations of Plaintiff's Complaint

BONY's Motion ignores the central allegations of the Complaint, which focus on BONY's failure to protect – and its improper transfer of – assets that were owned by Plaintiff and the Class and entrusted to BONY for safekeeping.  Instead of challenging the custodian malfeasance claims actually alleged, BONY constructs a "straw man" complaint and attacks other claims that Plaintiff could have alleged, but did not actually allege, based on BONY's alleged "purchase" of the assets pursuant to BONY's allegedly perfected lien.  BONY has completely (and perhaps deliberately) missed the point of this lawsuit.

Fed. R. Civ. P. 8(a) requires only that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (internal citations and quotations omitted).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964 (2007)). When evaluating a complaint in connection with a motion to dismiss under Federal Rule of Civil Procedures 12(b)(6), a court must "accept as true the complaint's factual allegations and draw all inferences in the plaintiff's favor." *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). As actually written, Plaintiff's complaint plainly states claims on which relief could be granted.

### B.    The Complaint States Valid Custodian Malfeasance Claims Against BONY

When BONY agreed to serve as custodian of the Segregated Accounts, it assumed duties to the account owners.  In derogation of those duties, BONY chose to protect itself against potential losses from its loans to Sentinel by enabling Sentinel to pilfer assets belonging to the account owners.  BONY's misconduct constituted negligence, conversion, and breach of fiduciary duty.

1.     BONY is Liable for Negligence

To prove negligence under New York law, a plaintiff must demonstrate: (1) a duty owed by the defendant to the plaintiff; (2) a breach thereof; and (3) injury proximately resulting therefrom. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006).  Incredibly, BONY maintains that a custodian bank holding the assets of an investor has no duties whatsoever to that investor. Def. Mem. at 10, fn.6.  BONY's argument defies common sense and has no basis in law.  As several sections of Article 8 of the U.C.C. make plain, and as New York courts have long recognized as a matter of common law, a bank acting as custodian owes duties to the owners of accounts maintained by the bank.

U.C.C. Article 8 (particularly Sections 8-503 through 8-509) imposes numerous responsibilities and duties on a "securities intermediary."  The official comment to the main definitions section of Article 8 observes that the "most common examples of securities intermediaries" include "banks acting as securities custodians."  U.C.C. § 8-102, cmt. 14.   BONY was doing just that.  Therefore, as a securities intermediary, it was required to "obtain and thereafter maintain a financial asset" on behalf of its entitlement holders.  U.C.C. § 8-504(a).  Ordinarily, if the securities intermediary has not entered into an explicit agreement with the entitlement holder, that duty is satisfied when "the securities intermediary exercises due care in accordance with reasonable commercial standards to obtain and maintain the financial asset."  U.C.C. § 8-504(c)(2). "The duty of care includes . . . care in the intermediary's own operations," and it "is meant to incorporate the principles of the common law," taking into account "the customs and practices of the business."  U.C.C. § 8-504, cmt. 4.  Securities intermediaries also must "exercise rights with respect to a financial asset if directed to do so by an entitlement holder" and, where the entitlement holder is not in a position to exercise rights directly, the securities intermediary must exercise "due

care in accordance with reasonable commercial standards to follow the direction of the entitlement holder." U.C.C. § 8-506 (2). A securities intermediary such as BONY also must make an entitlement holder whole if it improperly transfers a financial asset, and it may be required to pay damages. U.C.C. § 8-507(b).

Under the common law, BONY also acted as a bailee of the Class's assets. A careless bailee "does not escape liability" just because the person depositing the property was not the owner. *Grace v. Sterling, Grace & Co.*, 289 N.Y.S.2d 632, 639 (N.Y. App. Div. 1968). "[W]hen a bank is on notice that funds in a depositor's account are owned by a third party, the bank cannot appropriate those funds in order to set them off against a debt of the depositor." *Daly v. Atl. Bank of New York*, 614 N.Y.S.2d 418, 419 (N.Y. App. Div. 1994). The "bank will be considered to have such notice when it is aware of facts which would fairly provoke it to inquire as to the true ownership of the funds and such inquiry, if made with ordinary diligence, would reveal the true ownership." *Id.*

BONY relies on the *Lerner* case for the bizarre proposition that a custodian bank has no duty to the beneficial owners of segregated accounts overseen by a client of the bank, but *Lerner* holds precisely to the contrary. In *Lerner*, an unscrupulous lawyer opened trust accounts at several banks for certain of his clients. The plaintiffs alleged that the banks failed to report to the state bar association numerous overdrafts in other trust accounts established by the lawyer at the banks for other clients, and that if the bank had reported the overdrafts, the subsequent theft from their accounts would not have occurred. The Second Circuit held that the banks were negligent under these circumstances, reasoning that "a bank may be liable for participation in [such a] diversion, either by itself acquiring a benefit, or by notice or knowledge that a diversion is intended or being executed." *Lerner*, 459 F.3d at 287 (*citing In re Knox*, 477 N.E.2d 448, 451, (N.Y. 1985)).

Here, BONY is liable under either prong of the *Lerner* test.  First, BONY itself acquired a benefit because the Class's assets were improperly transferred out of the Segregated Accounts and into Sentinel's House Account, thereby increasing the value of BONY's alleged collateral.  FAC ¶¶ 33-34.  Second, Plaintiff has alleged that BONY had notice or knowledge that Sentinel intended and was asking BONY to execute an improper diversion of assets.  *Id.* at ¶¶ 24-29, 32.

BONY's guilty knowledge can be inferred from its familiarity with applicable SEC and CFTC regulations, which required it to maintain Sentinel client assets in Segregated Accounts for the benefit of the clients.  FAC ¶¶ 21-24, 28.  CFTC regulations provided that "[a]ll customer funds shall be . . . segregated as belonging to commodity or option customers," that "[s]uch customer funds when deposited with any bank, trust company, clearing organization or another futures commission merchant shall be deposited under an account name which clearly identifies them as such and shows that they are segregated," and that "[u]nder no circumstances shall any portion of customer funds be obligated to a clearing organization, any member of a contract market, a futures commission merchant, or any depository except to purchase, margin, guarantee, secure, transfer, adjust or settle trades, contracts or commodity option transactions of commodity or option customers."  17 C.F.R. § 1.20.

BONY also knew that it owed duties directly to the Class.  FAC ¶¶ 27-28.  Class members invested funds by forwarding checks or wire transfers directly to BONY, rather than making such payments directly to Sentinel.  FAC ¶ 25.  As compensation for the benefits BONY was supposed to provide to Class members, BONY paid itself directly out of their assets.  *Id.*

"Having such knowledge, [the bank is] under the duty to make reasonable inquiry and endeavor to prevent a diversion." *Lerner*, 459 F.3d at 287-88.  A diversion of client funds from segregated accounts to a house account is, at best, highly unusual and requires a reasonable inquiry

as to its purpose. "Facts sufficient to cause a reasonably prudent person to suspect that trust funds are being misappropriated will trigger [such] a duty of inquiry on the part of a depository bank, and the bank's failure to conduct a reasonable inquiry when the obligation arises will result in the bank being charged with such knowledge as inquiry would have disclosed." *Norwest Mortgage, Inc. v. Dime Sav. Bank of New York*, 721 N.Y.S.2d 94, 95 (N.Y. App. Div. 2001). BONY will be able to challenge Plaintiff's allegations after discovery, but for now Plaintiff has adequately alleged that BONY assumed duties to Sentinel's clients and that, in breach of those duties, BONY enabled the improper transfer of their property into Sentinel's House Account.

### 2.    BONY is Liable for Conversion

To maintain a claim for conversion, a plaintiff must show "legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's rights." *Regions Bank v. Wieder & Mastroianni, P.C.*, 526 F. Supp. 2d 411, 413 (S.D.N.Y. 2007). BONY characterizes the Complaint as an effort to recover property from a buyer, but a claim for conversion does not even require proof that the entity liable for conversion actually took possession of the converted asset. *See Ahles v. Aztec Enters., Inc.*, 502 N.Y.S.2d 821, 822 (N.Y. App. Div. 1986). A conversion occurs if there is a "denial or violation of the plaintiff's dominion, rights, or possession" over her property, *Sporn v. MCA Records, Inc.*, 448 N.E.2d 1324, 1325 (N.Y. 1983), and is also shown if the defendant prevents the owner from exercising rights over goods. *New York v. Seventh Regiment Fund, Inc.*, 774 N.E.2d 702, 711 (N.Y. 2002); *see also Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006); *Vigilant Ins. Co. of Am. v. Hous. Auth.*, 660 N.E.2d 1121, 1126 (N.Y. 1995). Wrongful intent on the part of the defendant is not an element of conversion. *Regions Bank*, 526 F. Supp. 2d at 413-14; *Filner v. Shapiro*, 633 F.2d 139, 141-42 (2d Cir. 1980).

The Complaint alleges that the Class owned the assets in question in the Segregated Accounts.  FAC ¶¶ 22-24.  The Complaint also alleges that BONY exercised dominion over the assets in the Segregated Accounts and interfered with the ownership rights of the Class by: (1) improperly transferring assets belonging to Plaintiff and the Class from the Segregated Accounts to the House Account owned by Sentinel; and (2) initiating efforts to seize the assets in the House Account as alleged collateral for loans to Sentinel.  FAC ¶¶ 32-34, 39.

3.      BONY is Liable for Breach of Fiduciary Duty

A claim for breach of fiduciary duty involves three elements: "breach by a fiduciary of a duty owed to plaintiff; defendant's knowing participation in the breach; and damages." *SCS Commc'ns, Inc. v. Herrick Co*., 360 F.3d 329, 342 (2d Cir. 2004).  Although the usual relationship of a bank to its depositors does not create a fiduciary duty, *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir. 1984), circumstances do exist in which a bank owes a fiduciary duty.  These circumstances rest on the distinction between general deposits and special deposits.  When a bank accepts a special deposit, "the intention is that the money shall be kept or used as a separate fund for the benefit of the payor or a third person." *Pereira v. United Jersey Bank, N.A*., 201 B.R. 644, 672 (S.D.N.Y. 1996) (*citing Kronisch v. Howard Sav. Inst*., 392 A.2d 178, 180 (N.J. Super. Ct. App. Div. 1978)); *see also Masi v. Ford City Bank & Trust Co.*, 779 F.2d 397, 401 (7th Cir. 1985) (special deposits create a trust relationship wherein the bank owes a fiduciary duty to the depositor).  The Segregated Accounts constituted "special deposits" because they were supposed to be separate funds (*i.e.* "segregated") for the benefit of the Plaintiff and the Class.  As a custodian of special deposits, BONY owed a fiduciary duty to the owners of the Segregated Accounts.  It knowingly breached those duties by transferring assets belonging to the Class to Sentinel's House Account.  FAC ¶¶ 32-34.

12

Even if BONY owed no fiduciary duty directly to the Class, it still would be liable for aiding and abetting Sentinel's breach of fiduciary duty. A claim for aiding and abetting a breach of fiduciary duty requires proof that: (1) a fiduciary breached its obligations to another; (2) the defendant knowingly induced or participated in the breach; and (3) the plaintiff suffered damage as a result of the breach. *Lerner*, 459 F.3d at 294. As an investment adviser, Sentinel had a fiduciary duty to its clients. *Bullmore v. Banc of Am. Sec. LLC*, 485 F. Supp. 2d 464, 470-471 (S.D.N.Y. 2007). Sentinel breached this fiduciary duty by directing the transfer of its clients' assets out of the Segregated Accounts and co-mingling those assets with its own. FAC ¶¶ 32-34. A plaintiff is not required to allege that the defendant had an intent to harm; proof of actual knowledge of the breach of duty is sufficient. *Lerner*, 459 F.3d at 294.

### C.    U.C.C. Section 8-503(e) Does Not Protect BONY from the Custodian Malfeasance Claims Alleged in the Complaint

BONY's argument amounts to this: pursuant to Section 8-503(e), a securities intermediary acting as a custodian, such as BONY, can escape claims alleged by account owners for a host of statutory and common law violations, including Article 8 violations as to which specific remedies against securities intermediaries are provided, simply by selling wrongfully transferred assets to itself rather than another party. Plainly, Section 8-503 does not offer the type of protection that BONY desires. Section 8-503(e) protects good-faith purchasers who obtain assets in the securities markets. It does not give securities intermediaries immunity for the complete dereliction of their custodial duties. Furthermore, the facts alleged in the Complaint do not support BONY's assumptions about who was a "securities intermediary," who was a "purchaser," who "obtained control" of the assets, and whether there was "collusion."

       1.      The Facts in the Complaint Do Not Establish that Sentinel Was a "Securities Intermediary"

Section 8-503(e) protects holders of assets if the holders received them from a "securities intermediary." A "securities intermediary" is defined as "a clearing corporation" or "a person, including a bank or broker, that in the ordinary course of its business *maintains securities accounts* for others and is acting in that capacity." U.C.C. § 8-102(a)(14) (emphasis added). Sentinel is not alleged to have "maintained" securities accounts, and thus cannot be deemed to fall within the definition of a "securities intermediary." At a minimum, Plaintiff is entitled to discovery to further investigate the role of Sentinel in the transactions and thereby determine whether Sentinel may qualify as a "securities intermediary."

BONY describes as "indisputable" its contention that Sentinel meets the U.C.C.'s definition of "securities intermediary," Def. Mem. at 7, but BONY's argument depends on assumptions that are inconsistent with the allegations in the Complaint. Nothing in the Complaint (or any other pleading) suggests that Sentinel was a clearing corporation, bank, or broker, or that Sentinel "maintained" its customers' accounts. BONY asserts that the allegations in the Complaint support its position, but BONY misquotes the Complaint on this point. Citing the first two paragraphs of the Complaint, BONY asserts that Sentinel is a "securities intermediary" because, "according to the Complaint, it is a manager of assets and investments that maintains securities accounts for its customers, including Plaintiff." Def. Mem. at 7-8 (citing FAC ¶¶ 1, 2). However, those two paragraphs merely state, in relevant part, that Plaintiff's class action is brought on behalf of clients of Sentinel, "who had assets managed by Sentinel . . . and for whom [BONY] functioned as custodian of their assets," and that "Sentinel is a registered investment adviser." FAC ¶¶ 1, 2. The Complaint specifically alleges that, because of SEC and CFTC requirements, BONY – not Sentinel – held the accounts for the Class. FAC ¶¶ 21-25. And the Complaint further alleges that BONY

knew full well that, pursuant to applicable federal regulations, it was BONY rather than Sentinel that would be responsible for holding and protecting – i.e., maintaining – the Segregated Accounts for the exclusive benefit of the Class.  FAC ¶¶ 23-28.

There is no exhaustive list of the types of entities that can qualify as a securities intermediary, but all of the examples cited in the comment to Section 8-102 are alike in that they all are entities that play a role in holding and transferring securities.  U.C.C. § 8-102, cmt. 14.  BONY cites no authority suggesting that that an investment adviser such as Sentinel, which never held client funds, can be considered a securities intermediary.  Cases defining "securities intermediary" identify banks, brokerages and other institutions that maintain custody of client-owned assets – not investment advisers that do not maintain custody of such assets.[4]  *See*, *e.g. SEC v. Credit Bancorp, Ltd.*, 386 F.3d 438, 447 (2d Cir. 2004) (large investment bank); *Johnny's Ent., Inc. v. Prudential Secs., Inc.*, 162 Fed. Appx. 239, 241 (4th Cir. 2006) (broker-dealer); *Drage v. First Concord Secs., Ltd.*, 707 N.Y.S.2d 782, 785 (N.Y. Sup. Ct. 2000) (foreign broker-dealer).

The *Drage* decision is most noteworthy for its treatment of the "collusion" issue discussed below, but the case also sheds light on the "securities intermediary" issue.  *Drage* involved a claim by an investor (Drage) who had an account held by a broker-dealer (FCS).  *Id.* at 784.  FCS transferred some of Drage's assets into a clearing account maintained by another entity (M&T). After FCS defaulted on a loan from M&T,  M&T seized and sold assets in the clearing account, which had been pledged by FCS as collateral.  Some of Drage's assets were sold along with other

---

[4]  Likewise, U.C.C. § 8-102(a)(9)(iii) defines a financial asset as including "*any property that is held by a securities intermediary* for another person in a securities account if the securities intermediary has expressly agreed with the other person that the property is to be treated as a financial asset under this Article."  (Emphasis added).  Under CFTC and SEC regulations, only a bank or other custodian – not an investment adviser – can actually hold property for clients. FAC ¶¶ 21, 28.

securities.  The Sentinel-BONY relationship differed from the FCS-M&T relationship in that M&T maintained only one relevant account: the clearing account.  M&T did not maintain segregated customer accounts for FCS's customers, as FCS maintained those accounts itself.  When the investor's assets were transferred out of an FCS segregated account and into the M&T clearing account, FCS acted as the securities intermediary, and the *Drage* court so found.[5]  *Id.* at 785.  By contrast, when Sentinel's customers' assets were transferred out of the Segregated Accounts held by BONY and into the Sentinel House Account also held by BONY, BONY appears to have been the only entity acting as a securities intermediary.  Sentinel, which was not a broker-dealer, merely acted as investment adviser to its customers (and as an investor with respect to its own account).

        2.     The Facts in the Complaint Do Not Establish that BONY Was a "Purchaser" of Assets

The protections of Section 8-503(e) are available only to a "purchaser" of assets.  The Complaint does not allege that BONY was a purchaser, and, once again, discovery may reveal additional facts that preclude BONY from qualifying as a purchaser as the term is defined in the U.C.C.  A "purchaser" is defined as one "who takes by purchase."  U.C.C. § 1-201(33).  A "purchase" includes, among other things, "taking by . . . lien."  U.C.C. § 1-201(32).  The Complaint does not allege, and BONY has not proven, that BONY has a valid lien over the assets at issue.  Furthermore, BONY was precluded from "taking" the assets by, among other things, Sentinel's bankruptcy filing, which occurred on the very day that BONY announced its intentions.

The bankruptcy court's stipulated order of December 13, 2007 reveals that, while BONY surely wanted to "take" the property at issue, it has not actually done so.  *See* Siddiqui Dec., Ex. A

---

[5]  Because M&T did not serve as custodian for Drage's segregated personal account, Drage could not make the same allegations against M&T that Plaintiff has made here against BONY regarding the duties of the custodian with respect to personal accounts.

at pp. 2-3. For example, BONY cannot decide to sell or hold the securities, as that power has been granted by the bankruptcy court to the Trustee. Siddiqui Dec., Ex. A at ¶¶ 1 & 4. Nor can BONY dispose of the proceeds of any sales as it sees fit, because the bankruptcy court has ordered that sale proceeds shall be segregated from other assets. *Id.* at ¶ 7. The bankruptcy court order also preserves the ability of all parties to assert their rights to the sale proceeds. *Id.* at ¶ 11.

3.      The Facts in the Complaint Do Not Establish that BONY "Obtained Control" of Assets

The protections of Section 8-503(e) are available only to a purchaser who "obtains control" over the assets at issue. Under Section 8-106(d)(1), a "purchaser has 'control' of a security entitlement if the purchaser becomes the entitlement holder." U.C.C. § 8-106(d)(1). The official comment to the U.C.C. explains that this means, essentially, that "the purchaser has taken whatever steps are necessary . . . to place itself in a position where it can have the securities sold, without further action by the owner." U.C.C. § 8-106, cmt. 1.

Plaintiff's Complaint does not establish that BONY obtained control over the relevant assets within the meaning of the U.C.C. As noted, BONY's use and disposal of the contents of the House Account have been severely circumscribed by the aforementioned stipulated order of the bankruptcy court. Without the ability to sell and use the proceeds from a sale as it sees fit, BONY plainly has not "obtained control" of the assets and is not protected by Section 8-503(e).

4.      The Complaint Adequately Alleges that BONY Colluded With Sentinel

As BONY concedes, Section 8-503(e) offers no protection to purchasers who collude with securities intermediaries in the improper transfer of assets. Def. Mem. at 10-14. In the Complaint, Plaintiff makes numerous allegations of collusion between BONY and Sentinel, including the following:

- "the Defendants wrongfully provided Sentinel with huge loans secured by the value of securities that they knew or were negligent or reckless in not knowing rightfully belonged to Plaintiff and the Class."  FAC ¶ 29;

- "Defendants allowed Sentinel to move . . . customer assets . . . to Sentinel's own 'House' account."  FAC ¶ 32; and

- "A possible reason for the Defendants' complicity in this transfer is that the assets that were improperly transferred out of the segregated client account and into Sentinel's 'House' account became immediately subject to a security agreement in favor of the Defendants guaranteeing a previously issued line of credit from the Defendants to Sentinel."  FAC ¶ 33.

These allegations, taken together, satisfy the definition of collusion whereby a security intermediary and a purchaser "act[] in concert . . . with actual knowledge that the securities intermediary is violating [an entitlement holder's] rights."  U.C.C. Article 8 "Legislative intent and declaration," N.Y. Advance Legislative Service, 1997 Sess., Ch. 566, Assembly Bill 6619-C, available at 1997 N.Y. ALS 566, § 1, ¶ 4 (1997).  BONY's contention that the Complaint "never so much as mentions 'collusion'" is misguided.  Def. Mem. at 13.  Plaintiff is not required to use any particular "magic word."  Plaintiff's complaint has set forth numerous facts suggesting a joint effort by Sentinel and BONY to harm the Class.  Plaintiff has given BONY "notice of the nature of the claim against it, including which of its actions gave rise to the claims upon which the complaint is based," such that BONY can "commence discovery and prepare a defense."  *E & L Consulting, Ltd. v. Doman Indus.*, 472 F.3d 23, 32 (2d Cir. 2006).  No more detail is required at this time.

In the *Drage* case, the court held on facts similar to those here that Drage had not only stated viable common law claims against M&T but had also alleged facts sufficient to demonstrate "collusion" by M&T within the meaning of Section 8-503(e).  707 N.Y.S.2d at 787.  As noted above, M&T had seized and sold Drage's securities, along with other securities, that had been held in a clearing account pledged as collateral by FCS.  M&T did so even though it knew that the clearing account contained some securities owned by FCS's customers.  The plaintiff had alleged,

among other things, that M&T Bank had extended excessive credit to FCS, knowing that FCS did not have sufficient assets to cover its debt, and that the bank artificially increased the value of the securities in the clearing account (specifically, by inflating the price of certain shares) to improve M&T's collateral position. 707 N.Y.S.2d at 787. Unlike Plaintiff here, Drage did not allege an actual collusive conversation or agreement, but the court drew the logical inferences from the parties' conduct and economic incentives, holding that the allegations sufficed to show collusion and to plead actions for conversion and unjust enrichment. *Id.*

BONY asserts that it should not be required to "investigate whether [a] seller[] may be acting wrongfully" or that it should have a "duty of inquiry" placed on it. Def. Mem. at 12. But as a custodian and securities intermediary, BONY was not allowed to bury its head in the sand – "willful blindness" with respect to an asset transfer in violation of the Class's property interests is sufficient to confer liability on BONY. *Credit Bancorp*, 386 F.3d at 448; *Lerner*, 459 F.3d at 287-88. Regardless of the extent to which BONY was required to make an inquiry, the facts as alleged in the Complaint are that, without any investigation or inquiry, BONY knew that Sentinel was engaged in wrongdoing; yet it decided to complete the asset transfers requested by Sentinel, thereby benefiting itself as Sentinel's allegedly secured lender by moving assets that plainly were not subject to BONY's alleged lien into a Sentinel-owned account from which BONY thought it could seize the assets as collateral. BONY understood perfectly well the consequences of its conduct.

**D.    This Case Should Not Be Stayed**

Neither U.C.C. Section 8-503(d) nor principles of judicial efficiency justify a stay of this litigation. The Sentinel bankruptcy Trustee has not sought to assert any of the claims asserted here, and allowing Plaintiff's case to proceed will not interfere with any efforts of the Trustee. Plaintiff's claims are distinct from those belonging to the Sentinel bankruptcy estate, and under well-

19

established law, only Plaintiff and other Class members have standing to pursue their own "personal" claims. Sentinel's bankruptcy Trustee could not assert their claims even if he wanted to. Delaying this case would merely allow BONY to continue to evade its responsibilities to the Class.

        1.      U.C.C. Section 8-503(d) is Inapplicable

U.C.C. Section 8-503(d) does not apply here because, as explained above, Sentinel was not a "securities intermediary" and BONY was not a "purchaser." It is also inapplicable because, again as explained above, Plaintiff is seeking damages for custodian malfeasance and is not suing BONY for obtaining assets as an allegedly secured lender.

Even if Section 8-503(d) could apply in theory, it does not apply where, as here, the Trustee has filed a complaint against the self-proclaimed purchaser and the Trustee's complaint does not include any claims made pursuant to Section 8-503(d). On March 3, 2008 (three days after BONY filed the Motion here), the Trustee filed a complaint against BONY in the bankruptcy court. Siddiqui Dec., Ex. C. He has asserted claims based on the Bankruptcy Code, claims based on alleged breaches of duty owed by BONY to Sentinel itself, and claims of apparent concern to Sentinel's entire creditor body, including state-law fraudulent transfer claims. Although the Trustee's complaint cites many facts that also support Plaintiff's claims here, including facts relating to improper transfers of assets out of the Segregated Accounts and into Sentinel's House Account, *see*, e.g., *id.* at ¶¶ 48-49, the Trustee's complaint does not invoke section 8-503(d) or assert the causes of action asserted by Plaintiff. Thus, pursuant to the very U.C.C. provisions cited by BONY, Plaintiff is free to prosecute his claims.

2.    Plaintiff Should be Permitted to Prosecute Claims that Are Independent of the Trustee's

The Trustee would not have standing to assert Plaintiff's claims.  "[A] bankruptcy trustee has no standing generally to sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *In re Bennett Funding Group, Inc*., 336 F.3d 94, 99-100 (2d Cir. 2003) (*quoting Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991)).  The distinction between claims belonging to debtors and those belonging to their individual creditors is well established.  If a claim against a third party could be brought by a single creditor, then unless the claim could be brought by and for the benefit of any creditors of the debtor, without regard to personal dealings between particular creditors and the third party, a bankruptcy trustee will not be permitted to assert that claim, as it is not an asset of the bankruptcy estate. *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) ("the trustee is confined to enforcing entitlements of the corporation . . . [and] has no right to enforce entitlements of a creditor").

By contrast, if "a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." *St. Paul Fire and Marine Ins. Co. v. Pepsico, Inc*., 884 F.2d 688, 701 (2d Cir. 1989); *see also Koch Refining v. Farmers Union Central Exchange, Inc*., 831 F.2d 1339, 1348-49 (7th Cir. 1987) ("allegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditors").  As noted, Plaintiff's claims here are not based on BONY's alleged status as a secured creditor of Sentinel.  The Trustee's complaint addresses that issue, which is of concern to all creditors.  The fact that BONY attempted to assert a security interest over the stolen assets says much about BONY's collusive motives, but Plaintiff's Complaint does not seek to disallow

BONY's security interest, nor does it assert fraudulent transfer claims, and Plaintiff will wait, along with all of Sentinel's other creditors, for the bankruptcy court's resolution of those issues.

Plaintiff's claims are based on injuries suffered by some, but not all, of Sentinel's creditors. Plaintiff and the Class were harmed separate and apart from any harm that Sentinel itself may have suffered as a result of BONY's conduct. Thus, the claims asserted in the Complaint are classic "direct" claims, not "indirect" or "derivative" claims that would belong to Sentinel or its bankruptcy Trustee. *See Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 463 (7th Cir. 1991) (finding that ERISA claims brought by a class of former employees of two bankrupt companies could not have been brought by the trustee during bankruptcy proceedings because the claims "were not claims of the creditors generally but ERISA claims unique to the former employees."); *see also Vincel v. White Motor Corp.*, 521 F.2d 1113, 1118 (2d Cir. 1975); *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 439-40 (S.D.N.Y. 2006); *In re Granite Partners L.P.*, 194 B.R. 318, 324-25 (S.D.N.Y. 1996).

Sentinel's bankruptcy Trustee has acknowledged the difference between claims belonging to individual Sentinel customers and claims belonging to the bankruptcy estate. In the Trustee's adversary proceeding against several former officers and directors of Sentinel, the Trustee stated that he "is not asserting claims on behalf of customers [of Sentinel], but rather . . . is pursuing claims arising from breaches of fiduciary duties to *Sentinel itself*." (Emphasis in original). Siddiqui Dec., Ex. B at pp. 4-5. While the Trustee's complaint against BONY is not always as clear on this point as it could be, the complaint does not purport to assert the Class's personal claims.

Furthermore, while some of the bankruptcy court litigation may involve facts that also are at issue here, judicial efficiency considerations do not justify a stay of this action. It is common for multiple litigations to proceed in parallel even though, to some extent, they involve common

22

witnesses, documents, and events. *See Brierwood Shoe Corp. v. Sears, Roebuck and Co.*, 479 F.

Supp. 563, 568 (S.D.N.Y. 1979) (denying stay of action initiated by minority shareholder against

corporation despite pending litigation in another district arising out of same factual situation); *Schiff*

*v. RKO Pictures Corp.*, 283 A.D. 659, 659 (N.Y. App. Div. 1954) (denying stay in derivative action

by minority stockholders where defendants asserted that pending action by other stockholders

involved similar issues). This action also was filed before any of the parallel proceedings noted by

BONY. If some actions are to be stayed while another goes forward, the earlier filed action should

be the one to go forward. *See Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d. 436,

440 (S.D.N.Y. 2001) (staying later filed action under first filed rule).

### E.    The Bank of New York Mellon Corporation is a Proper Party

BONY argues in a footnote that Bank of New York Mellon Corporation should be dismissed

because it is an improperly named party. Def. Mem. at 6, fn.3. Plaintiff has identified specific

conduct by Bank of New York Mellon Corporation that is at the core of these allegations. On

August 17, 2007, Bank of New York Mellon Corporation informed Sentinel by letter that it

intended to start selling the securities that BONY had improperly transferred to Sentinel's House

Account. FAC ¶ 39. At this stage of the case, Plaintiff has adequately alleged that Bank of New

York Mellon was involved in the misconduct, and it cannot be said that discovery is unlikely to

reveal facts showing the Bank of New York Mellon Corporation's participation in the wrongful

conduct. *See Glendora v. Malone*, 917 F. Supp. 224, 227 (S.D.N.Y. 1996).

### F.    If the Complaint is Dismissed, Leave to Amend Should Be Granted

Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given

when justice so requires. Although the following information was not included in the Complaint

(and was not required under the applicable notice-pleading standard), it has recently become available to Plaintiff and could be included in a future amendment to the Complaint.

As noted, the Sentinel bankruptcy Trustee recently filed a complaint against BONY. That complaint cites internal Sentinel documents that Plaintiff has not yet seen. For example, the Trustee quotes a senior BONY official as asking the following question to other BONY employees: "How can [Sentinel] have so much collateral? With less than $20MM in capital I have to assume most of this collateral is for somebody else's benefit. Do we really have rights on the whole $300MM?" Siddiqui Dec., Ex. C. at ¶ 135. The Trustee's complaint also states that BONY transferred some assets from the Segregated Accounts to the House Account after "BONY acted unilaterally to secure its loan," without the benefit of any "desegregation instructions" from Sentinel or its customers. *Id.* at ¶ 162. It also alleges that BONY refused to comply with certain instructions to restore customer assets to the Segregated Accounts. *Id.* at ¶ 164.

Plaintiff also recently obtained copies of three 1997 letter agreements executed by BONY, one for each Segregated Account. They state, among other things, that the assets in the Segregated Accounts would be "segregated and treated as belonging to [Sentinel's] customers rather than as belonging to [Sentinel]," and that the "funds in said accounts will not be subject to [BONY's] lien or offset for, and on account of, any indebtedness now or hereafter owing us to [BONY] and shall not be applied by [BONY] upon any such indebtedness." The letter agreements also show that the official names given to the accounts reflected their special status. For example, the first segregated account was called "Sentinel Management Group, Inc. Customer Segregated Account I (§4.d-2)." (The reference to "§ 4.d-2" indicated that the parties were aware of the relevant asset-segregation provisions of the Commodity Exchange Act.) The other two account names substituted roman numerals II and III, respectively, for roman numeral I. Siddiqui Dec., Exs. D, E, and F.

If the Court were to require more specificity, Plaintiff could add this and other information to the Complaint.  Amendment in this situation would not be futile.

## IV.     CONCLUSION

Because Plaintiff has sued BONY for the damages incurred as a result of BONY's malfeasance as an account custodian, and because Sentinel's bankruptcy Trustee could not assert Plaintiff's claims, this case should not be dismissed or stayed.


DATED:  March 31, 2008                         Respectfully submitted,

**LOVELL STEWART HALEBIAN LLP**
CHRISTOPHER LOVELL (CL 2595)
GARY S. JACOBSON (GJ 2481)
IMTIAZ A. SIDDIQUI (IS 4090)


____/s/ Imtiaz A. Siddiqui_____
IMTIAZ A. SIDDIQUI
500 Fifth Avenue, Suite 5800
New York, New York  10110
Telephone:  212-608-1900
Facsimile:  212-719-4677


Karl P. Barth                                        Paul M. Weiss
Keri L. Greenheck                              **FREED & WEISS, LLP**
**LOVELL MITCHELL &**               111 West Washington
**BARTH, LLP**                                  Suite 1331
11542 NE 21st Street                          Chicago, IL 60602
Bellevue, WA 98004                           (312) 220-0000
(425) 452-9800

                                                           Terrence F. Durkin
David B. Killalea                               **THE LAW OFFICES OF**
Stephen A. Weisbrod                             **TERRENCE F. DURKIN**
**GILBERT RANDOLPH LLP**          414 Orleans Plaza
1100 New York Ave., N.W.                 Suite 312
Suite 700                                            Chicago, IL 60610
Washington, DC 20005                        (312) 813-7366
(202) 772-2200

                                                           Counsel for Plaintiff