# Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **SENTINEL MANAGEMENT GROUP, INC.,** | ) | **CASE NO. 07 B 14987** |
| | ) | |
| Debtor. | ) | Hon. John H. Squires |
| ──────────────────────── | ) | |
| | ) | |
| **FREDERICK J. GREDE**, as Chapter 11 Trustee | ) | |
| for Sentinel Management Group, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **ADV. NO. 07-00981** |
| **PHILIP M. BLOOM,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**TRUSTEE'S CONSOLIDATED RESPONSE TO
DEFENDANTS' MOTIONS TO DISMISS**

**Introduction**

Defendants' motions to dismiss the Trustee's complaint[1] depend on substituting their own, fancifully repackaged version of the Complaint for the Complaint that actually was filed by the Trustee, making factual assumptions that are directly contrary to the actual allegations in the Complaint, and worse, ignoring controlling precedent. They are without merit.

Contrary to Defendants' contentions, the Trustee is the *only* party with standing to pursue the claims pled in Counts 9 through 12 (breach of fiduciary duty), Counts 13 and 14 (unlawful dividend), Count 15 (civil conspiracy) and Count 16 (unjust enrichment). This is the holding of *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339 (7th Cir. 1987), and its

---

[1] None of the Defendants have moved to dismiss Count 17 (equitable subordination) or Count 18 (disallowance of claims).

progeny, including this Court's decision in *Krol v. Wilcek* (*In re H. King & Assocs.*), 295 B.R. 246, 266-67 (Bankr. N.D. Ill. 2003), controlling authority that Defendants ignore.

With respect to the Trustee's avoidance actions (Counts 1 through 8), Defendants contend that, as a matter of law, every single dime transferred to *them* was property of Sentinel's *customers*, which the Trustee has no right to recover. To support this contention, Defendants ignore key factual allegations to the contrary and rely on incorrect and unwarranted inferences from others. Defendants then blindly conclude from the Trustee's description of *how* the Defendants caused massive losses to Sentinel and its customers (that is, through their improper use of customer and Sentinel property), that the transfers they received therefore must have been transfers of customer property – a *non sequitur* that is not supported by the facts alleged in the Complaint.

The Trustee alleges in detailed factual averments that the transfers received by the Defendants were transfers of property in which the Debtor had an interest, and those allegations must be taken as true for purposes of a motion to dismiss. Moreover, this Court should reject Defendants' invitation to decide the fact-intensive "property of the estate" issue on a motion to dismiss. Whether *some* of the literally hundreds of transfers identified in the Complaint *might* constitute transfers of customer property (or its traceable proceeds) cannot possibly be settled on the pleadings, and would require substantial factual discovery and legal analysis. And although it is unlikely that the Court would even need to reach the complicated customer property issues in order to render judgment against the defendants, such issues – if they need to be decided at all – should be decided at trial, not on a motion to dismiss.

**Argument**

I.      **The Trustee Has Standing to Bring Claims For Injury to Sentinel.**

"The trustee represents not only the rights of the debtor but also the interests of creditors of the debtor." *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1342 (7th Cir. 1987). The trustee's job is to marshal the debtor's property for the benefit of the estate, which entails the right to sue parties for the recovery of such property. *Id.* Legal rights or interests belonging to a debtor are property of the estate, and therefore do not "belong to any individual creditor." *Kalb, Voorhis & Co. v. American Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993). The "trustee has the sole responsibility to represent the estate, by bringing actions on its behalf to marshal assets for the benefit of the estate's creditors." *Fisher v. Apostolou*, 155 F.3d 876, 879 (7th Cir. 1998). This assignment of responsibility "is intended to promote the orderly and equitable administration of a bankrupt's estate . . . . *Solow v. Stone*, 994 F. Supp. 173, 178 (S.D.N.Y. 1998). "The trustee's single effort eliminates the many wasteful and competitive suits of individual creditors." *Koch Refining*, 831 F.2d at 1343.

Counts 9 through 12, 15 and 16 of the Complaint assert claims against the Debtor's insiders for breach of fiduciary duties owed to Sentinel and related entities, aiding and abetting breaches of fiduciary duty, unjust enrichment and conspiracy. Counts 13 and 14 assert claims against Sentinel Investment Group, Inc. (the Debtor's parent corporation) and its insiders for damages they caused to Sentinel. All of these claims are property of the Debtor's estate, and the Trustee is the proper party to pursue such claims.

Only a bankruptcy trustee has standing to bring an action against officers of the debtor for breach of their fiduciary duties to the debtor. *Koch Refining*, 831 F.2d 1339. In *Koch Refining,* individual creditors claimed that they, not the bankruptcy trustee, were the parties with

standing to bring an *alter ego* complaint against the debtor's members for breach of fiduciary duty. The Seventh Circuit rejected that argument, explaining:

> It is axiomatic that the trustee has the right to bring *any action in which the debtor has an interest, including actions against the debtor's officers and directors for breach of duty or misconduct*. [*Pepper v. Litton*, 308 U.S. 295, 307 (1939)]. In that capacity, the trustee acts to benefit the debtor's estate, which ultimately will benefit the debtor's creditors upon distribution.

*Koch Refining*, 831 F.2d at 1348 (emphasis added). Indeed, the trustee is the "only party who can sue to represent the interests of the creditors as a class." *Apostolou*, 155 F.3d at 879.

This Court applied these principles to uphold the trustee's standing in *Krol v. Wilcek* (*In re H. King & Assocs.*), 295 B.R. 246, 266-67 (Bankr. N.D. Ill. 2003). There, the trustee sued the debtor's former officers on various theories, including that they had breached their fiduciary duty to the debtor by usurping a corporate opportunity. The former officers contended, as Defendants do here, that individual creditors had the right to pursue these claims. This Court, relying on *Koch* and *Apostolou*, squarely rejected that argument because "the Trustee is not bringing the causes of action for the personal claims of a specific creditor. Rather, she brings the instant causes of action on behalf of the bankruptcy estate for all creditors of the Debtor." *H. King,* 295 B.R. at 267. Thus, the breach of fiduciary duty claims brought by the Trustee here are paradigm examples of causes of action which he has standing to pursue.

Remarkably, defendants do not even acknowledge (much less try to distinguish) *Koch*, *Apostolou,* and *H. King*. Defendants instead deal with the allegations of breach of fiduciary duties to Sentinel by pretending that those duties do not even exist, in essence arguing that their duties instead ran to Sentinel's customers. Whether the defendants also breached duties owed to customers, however, is a different question. Here, the Trustee is not asserting claims on behalf of customers, but rather plainly has alleged and is pursuing claims arising from breaches of

4

fiduciary duties to *Sentinel itself*. *See, e.g.,* Complt. ¶¶ 1, 2, 38, 212-216, 218-219, 221-226, 228-229, 246-247. There simply can be no dispute that the Trustee is the only person entitled to pursue *Sentinel's* claims against its own officers and directors for breaching their fiduciary duties to Sentinel. *See, e.g., Steinberg v. Buczynski*, 40 F.3d 890 (7th Cir. 1994) (distinguishing between a creditor's direct claim against third parties and the creditor's interest in claims of the corporation against a third party, which are enforced by the trustee).

Defendants suggest that individual investors are the only parties with standing because they ultimately lost money at Sentinel as a result of defendants' misconduct. But defendants' argument confuses the distinct questions of who has standing to pursue claims arising from insider misconduct damaging a corporation (the corporation's trustee) with who eventually suffers the greatest financial losses from the misconduct (the corporation's creditors). Indeed, in this respect Sentinel's case is no different from any other bankruptcy case involving insider misconduct. Creditors invariably are harmed by insider misconduct, but that does not change the fact that the corporation's bankruptcy trustee is the proper party to assert the corporation's claims against the corporation's officers and directors.

No authority cited in Defendants' briefs supports their standing argument. Defendants principally, but mistakenly, rely on *Indemnified Capital Invs., SA v. R.J. O'Brien & Assocs.*, 12 F.3d 1406 (7th Cir. 1993). There, plaintiff ICI invested both customer funds and house funds in a futures trading account with defendants, who proceeded to lose the money. ICI claimed a breach of fiduciary duty, not by its own principals, but by the futures trading firm and its principals. There was nothing in the complaint, however, suggesting that the defendants owed any fiduciary duty to *ICI* with respect to *ICI's customers'* funds. The court held, as to the customer funds, that the defendants had not caused a sufficient injury to ICI itself. Here, by

5

contrast, the Trustee is not complaining about the misconduct of some third party, but rather of Sentinel's own principals, who obviously owe a fiduciary duty to Sentinel.  *Indemnified Capital* is thus irrelevant.

Indeed, defendants' strained reading of *Indemnified Capital* cannot be reconciled with the Seventh Circuit's decision in *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995).  Like this case, *Scholes* involved a breach of fiduciary duty to corporations and an ultimate loss to investors who placed their money with the corporations.  The Ponzi scheme operator (Douglas) argued, just as the defendants do here, that the real victims were the investors who lost the funds they invested, not the corporations, and therefore the receiver had no standing.  *Scholes*, 56 F.3d at 753-754.  The Court rejected that argument, holding that the corporations were legal entities separate from Douglas, which themselves sustained an injury, and that there was no reason why the receiver could not bring suit to get the money back to its rightful owners.  *Scholes*, 56 F.3d at 754-755.

The cases cited above, and many others, firmly establish that claims against insiders of a debtor engaged in misconduct or breach of fiduciary duty belong to the debtor's estate.  Thus, in addition to the breach of fiduciary duty claims, the other claims asserted by the Trustee in Counts 9 through 16 (unjust enrichment and conspiracy, as well as Sentinel's own claims against its parent corporation and its insiders) all are property of Sentinel's estate which the Trustee has standing to pursue.  *See, e.g.*, *In re MortgageAmerica Corp.*, 714 F.2d 1266 (5th Cir. 1983) (state law causes of action for denuding the corporation were property of the estate and thus creditor could not assert them); *Dana Molded Prods., Inc. v. Brodner*, 58 B.R. 576, 578 (N.D. Ill. 1986) (individual creditor's RICO and fraud suit dismissed for lack of standing); *Miller v. McCown De Leeuw & Co. (In re Brown Schs.)*, 368 B.R. 394, 400 (Bankr. D. Del. 2007) (upholding trustee's standing in actions for *inter alia*, civil conspiracy); *Doctors Hosp. of Hyde Park, Inc. v. Desnick*

(*In re Doctors Hosp. of Hyde Park*, Inc.), 308 B.R. 311, 318-19 (Bankr. N.D. Ill. 2004) (holding that trustee, not bank, had standing to sue debtor's shareholders as alter egos of the corporation); *Fisher v. Am. Nat'l Bank and Trust Co. of Chicago (In re Elite Mktg. Enters., Inc.)*, No. 99-B-29921, 2001 WL 1669229, at *3-5 (Bankr. N.D. Ill. Dec. 13, 2001) (concluding that trustee had standing to assert claims for, *inter alia*, inducement of breach of fiduciary duty and unjust enrichment).

## II.     The Trustee Has Properly Pled the Avoidance Claims Alleged In the Complaint.

Counts 1 through 8 seek avoidance of fraudulent and preferential transfers made to the insiders. Defendants' argument with respect to the avoidance actions, comes down to this: (1) the Trustee can only avoid transfers of "an interest of the debtor in property," (2) every penny of the transfers alleged in the Complaint to have been made to or for the benefit of the defendants was, as a matter of law, customer trust funds, and (3) therefore, the Trustee cannot recover any of the transfers for the benefit of the estate. Defendants undoubtedly are correct about the first proposition, but are badly mistaken about the others.

*First,* in order to make their arguments, defendants necessarily ignore the numerous explicit allegations made by the Trustee in the Complaint that Sentinel itself had an interest in the property transferred to them. *See, e.g.* Complt. ¶1 (defendants used their investment vehicles to funnel off profits "from Sentinel"); Complt. ¶ 2 ("Individual Defendants' pattern of unlawful conduct defrauded Sentinel of money and property...."); Complt. ¶ 6 (insiders "continued to loot the company" through a pattern of improper transfers); Complt. ¶¶ 144, 150, 157, 166, 175, 183, 192 (each of the Insider Transfers "constituted transfers of interests in Sentinel's property"); Complt. ¶¶ 216, 219, 226, 229, 248 (Sentinel has been damaged by the defendants' scheme). Although Defendants would prefer to ignore what the Complaint actually says there is no reason

for this Court to do so. The well-pled allegations that the transfers were transfers of interests in Sentinel's property must be accepted as true. *See Brown v. Stacy (In re Stacy)*, 227 B.R. 272, 275 (Bankr. N.D. Ill. 1998).

*Second,* the defendants repeatedly ask this Court to draw inferences using facts *not* pled in the Complaint, and invite the Court, based on those inferences, to find that the transfers received by the defendants were transfers of customer property. *See*, *e.g.*, Bloom Mem., pp. 10-12 ("The Trustee does not allege that…."). That, however, is not the standard for deciding whether a complaint survives a motion to dismiss. Rather, inferences are to be drawn from the facts actually pled in the complaint, *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993), and all inferences must be drawn in favor of the plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999); *Brown*, 227 B.R. at 275 (citations omitted). Defendants turn these well-settled pleading rules on their head.

*Third,* the detailed allegations of the Complaint point to only one conclusion for purposes of the motions to dismiss: that at least a significant portion of the transfers the Trustee is seeking to avoid were of property of Sentinel. The transfers sought to be avoided include salary payments to the Blooms and Mosley (Complt. ¶¶130-131); bonuses to the Insiders (Complt. ¶ 132); and a $1.3 million bogus administrative fee to Sentinel's parent company, which was controlled by the Blooms. Complt. ¶¶ 85-89, 118-19. There is nothing in the Complaint to suggest that defendants were paid their salaries and bonuses out of customer accounts rather than the firm's general operating account. Indeed, the Complaint does not allege that *any* of the transfers sought to be avoided originated from segregated customer accounts. Absent such

8

allegations, it is difficult to understand how defendants can ask this Court, as a matter of law, to find that each and every penny transferred to them belonged to customers.[2]

The same is true with respect to the roughly $15 million in transfers that represented purported "redemptions" from the defendants' accounts in the House portfolio (Complt. ¶ 128). The facts pled in the Complaint make it clear that the insider redemptions were not legitimate transactions, but rather simply the mechanism by which the defendants extracted the proceeds of their fraudulent scheme from the company. See Complt. ¶ 117 ("substantially all . . . constituted fraudulently realized proceeds of the defendants' criminal scheme.")  In an effort to avoid the obvious import of these allegations, Defendants advance a tortured reading of the Complaint's description of the House or Street account, which they seek to recharacterize as some sort of trust account for themselves in which Sentinel has no interest. (Bloom Mem. at 5, 8).  Neither the plain meaning of the terms "House" or "Street" in this context, nor the other allegations of the Complaint, support this reading.  While Defendants undoubtedly profited from the House account, the Complaint does not allege that the "House" was merely a series of trust accounts for the individuals, says nothing about how any account was titled, and does not suggest that Sentinel had bare legal title to the account.  And more fundamentally, no case holds that simply by using a trust or other similar account structure to steal funds from a company, the wrongdoer can actually obtain an interest superior to the company in those pilfered funds.

*Fourth,* even assuming the Trustee had alleged in the Complaint that every penny transferred to the defendants represented funds that were supposed to held in trust (which plainly he did not), the Complaint still would survive a motion to dismiss.  It is true that pursuant to the customer agreements and applicable law, customer money and securities *were supposed to be*

---

[2] Even if there were such allegations, the Complaint's allegations of commingling would, as demonstrated below, preclude any finding as a matter of law that these funds are customer property.

segregated from Sentinel's own funds. But as should be clear from the Complaint, the insiders failed to *in fact* segregate customer funds and property, so what constitutes property of the debtor's estate becomes a complicated issue of fact even with respect to funds that can be attributed to customer accounts.

In order to establish a trust relationship that excludes property from a bankruptcy estate, both the existence of a trust relationship and a *res* must be established. If funds are commingled and cannot be traced, the funds may constitute property of the estate notwithstanding the existence of a trust relationship. As the United States Supreme Court held in *Cunningham v. Brown*, 265 U.S. 1, 11-12 (1924): "to succeed [the defrauded investor] must trace the money… but it is impossible.…There was, therefore, no money coming from them upon which a constructive trust, or an equitable lien could be fastened.… In such a case, the defrauded lender becomes merely a creditor [of the estate]."); *Accord Rosenberg v. Collins*, 624 F.2d 659, 663 (5th Cir. 1980) (holding that funds invested in Ponzi scheme were property of the bankrupt, not the customers, because funds were commingled and untraceable); *Sonnenschein v. Reliance Ins. Co.*, 353 F.2d 935, 936-38 (2d Cir. 1965) (where claimant's funds received in trust, but were commingled with other funds of debtor and placed in general operating account, and claimant could not trace those funds, beneficiary is only a general creditor of the estate).; *Berger, Shapiro & Davis, P.A. v. Haeling (In re Foos)*, 183 B.R. 149, 153 (Bankr. N.D. Ill. 1995) (refusing to impose constructive trust over allegedly traceable funds transferred to a commingled bank account)*; Oxford Organisation, Ltd. v. Peterson (In re Stotler & Co.)*, 144 B.R. 385, 393 (N.D. Ill. 1992) (denying imposition of constructive trust because, *inter alia,* funds could not be traced).[3] Thus, where an entity fails to fulfill its promises to segregate trust property and the

---

[3] *Accord In re Bullion Reserve of N. Am.*, 836 F.2d 1214, 1217 (9th Cir. 1988) (even if investor gave funds to debtor in trust, they were commingled and could not be traced and therefore became property of

10

property cannot be traced, the entrusted funds become property of the debtor's estate. *See, e.g., Emerson v. Maples (In re Mark Benskin & Co., Inc.)*, 161 B.R. 644, 652 (Bankr. W.D. Tenn. 1993). Even where, as here, a statutory requirement prohibiting commingling has been violated, if the beneficiary cannot trace his funds, they constitute property of the estate. *In re Faber's, Inc.*, 360 F. Supp. 946, 949-50 (D. Conn. 1973).

Defendants cite *Begier v. IRS*, 496 U.S. 53 (1990), to support their argument that it is sufficient that the funds contributed were supposed to be held in trust, irrespective of whether they were actually so held. In *Begier*, however, the Court held that federal employment and excise taxes collected by the debtor were not property of the estate because the Internal Revenue Code *specifically deemed an amount equal to the taxes to be a trust fund*: "the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." 496 U.S. at 60. (citation omitted)  The Court specifically distinguished that unique situation, where a statute explicitly "creates a trust in an abstract 'amount' -- a dollar *figure* not tied to any particular assets," from a common-law trust in which the settlor sets aside particular property as the trust *res*. *Id.* at 62. As a result of the special statutory provision at issue in *Begier*, typical tracing rules did not apply. *Id.* at 62-63. Because there is no statute here that creates a trust in an abstract amount or that abrogates common-law tracing rules, *Begier* is inapposite.

---

the debtor); *First Fed. of Michigan v. Barrow*, 878 F.2d 912, 915 (6th Cir. 1989) (holding that the investors' inability to trace funds which debtors had commingled in joint account precluded imposition of constructive trust for purpose of removing funds from debtors' bankruptcy estate); *Connecticut General Life Ins. Co. v. Universal Ins. Co.*, 838 F.2d 612, 618-20 (1st Cir. 1988) (because claimant could not trace alleged trust funds, which were commingled with other funds of the debtor, claimant could not recover); *Daly v. Radulesco* (*In re Carrozella & Richardson)*, 247 B.R. 595, 600-01 (B.A.P. 2d Cir. 2000) (same); *In re Lemons & Assocs., Inc.*, 67 B.R. 198, 213 (Bankr. D. Nev. 1986) (commingled customer funds were estate property where "creditor cannot sufficiently identify or trace the trust res through a commingled fund where the fund is too small to satisfy the claims of similarly situated parties.").

Given the scope of the defendants' wrongdoing and the actual facts pled in the Complaint (as opposed to those supplied by the defendants), it is unlikely the Court ever will need to address the complicated customer property, commingling and tracing issues. However, for purposes of the present motions to dismiss, the Complaint plainly alleges significant failures to segregate and commingling (Complt. ¶¶ 4, 42, 49-51, 55, 60, 69, 72), and further alleges that the defendants concealed the commingling by sending the customers false and misleading statements of their accounts on a daily basis. Complt. ¶¶ 79-80. Because the Court is obliged to deny the motions to dismiss if the Complaint, fairly read, alleges that *any* of the transfers were of property in which Sentinel held an interest, the motions to dismiss must be rejected.

### III.    Section 546(e) Does Not Preclude the Trustee's Claims.

Defendants also argue that Section 546(e) of the Bankruptcy Code precludes the avoidance of the Insider Withdrawals. This argument fails for at least three reasons.

*First*, as admitted in footnote 8 of the Bloom Memo, the safe harbor of section 546(e) of the Bankruptcy Code does not apply to claims for actual fraud under section 548(a)(1)(A) of the Bankruptcy Code, and therefore Count 1 (which seeks to avoid transfers made with actual fraudulent intent) cannot be dismissed on this basis.

*Second*, the Bloom Defendants assert that because Sentinel is a futures commission merchant, it therefore is a "commodity broker" as that term is used in safe harbor provisions of section 546(e). But Section 101(6) defines a "commodity broker" as a "futures commission merchant ... *with respect to which there is a customer*, as defined in section 761 of this title." 11 U.S.C. § 101(6) (emphasis added). A "customer," with respect to a futures commission merchant, is defined in section 761 as an:

>    (i) entity for or with whom such futures commission merchant deals and that holds a claim against such futures commission merchant on account of a commodity contract . . . ; or
>    (ii) entity that holds a claim against such futures commission merchant arising out of—
>        (I) the making, liquidation, or change in the value of a commodity contract of a kind specified in clause (i) of this subparagraph;
>        (II) a deposit or payment of cash, a security, or other property with such futures commission merchant for the purpose of making or margining such a commodity contract; or
>        (III) the making or taking of delivery on such a commodity contract;

11 U.S.C. § 761(9)(A). In other words, to qualify as a commodity broker, a customer of the futures commission merchant must exist who holds a claim relating to a commodity trading contract. Sentinel was a special purpose futures commission merchant that did not engage in commodities trading or accept deposits for commodities trading. Therefore, Sentinel had no commodity "customers" for purposes of section 761,[4] and is not a commodity broker for purposes of section 546(e) of the Bankruptcy Code. *Cf. Wider v. Wootton*, 907 F.2d 570, 573 (5th Cir. 1990) (debtor who was not a stockbroker because he did not have customers was not entitled to the "stockbroker defense" of section 546(e)).

*Third*, the Insider Withdrawals were not settlement payments, as that term is used in section 741 of the Bankruptcy Code. Giving the term its broadest reading, a settlement payment is a transfer of funds or securities toward the completion of a securities transaction. *See, e.g., Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 848-49 (10th Cir. 1990). Here, there is nothing in the Complaint to suggest that the Insider Withdrawals were made to complete securities transactions. Rather, the Trustee has alleged that the Insider Withdrawals simply were the method used by the insiders to extract their fraudulently-procured gains. Because they were not settlement payments they cannot be safe-harbored. *See Wieboldt Stores, Inc. v.*

---

[4] Indeed, it is for this very reason that Sentinel is not the subject of a subchapter IV, chapter 7 commodity broker liquidation.

*Schottenstein*, 131 B.R. 655, 664-65 (N.D. Ill. 1991) (considering legislative history and the settlement system section 546(e) was designed to protect, payments received by shareholder in leveraged buyout were not settlement payments); *Kipperman v. Circle Trust F.B.O. (In re Grafton Partners, L.P.)*, 321 B.R. 527, 541 (B.A.P. 9th Cir. 2005) ($4 million payment made by company funding a *Ponzi* scheme, in response to demands by member to withdraw its capital contribution, was not a settlement payment); *Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 478 (S.D.N.Y. 2001) (sham bookkeeping entries that did not reflect actual securities transactions were not settlement payments). Moreover, even if the Insider Withdrawals had been made in connection with legitimate securities transactions, the policies underlying section 546(e) are not implicated here, where the transfers sought to be avoided are non-market transfers that insiders caused their own company to make to themselves.[5]

In any event, determination of whether the Insider Transfers were settlement payments is a factual issue not proper for decision on a motion to dismiss. *See Enron Corp. v. J.P. Morgan Securities, Inc. (In re Enron Corp.)*, 325 B.R. 671, 685-687 (Bankr. S.D.N.Y. 2005).

## IV. Defendant Mosley's Separate Contentions Are Without Merit.

In addition to adopting the arguments advanced by the Blooms, Defendant Mosley alludes to two other bases for dismissal, neither of which has any merit.

First, Mosley claims that the Complaint fails to meet the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (U.S. 2007). As the Seventh Circuit has held,

---

[5] "Congress exempted settlement payments . . . out of concern that the bankruptcy of one party in the clearance and settlement chain could spread to other parties in that chain." *Wieboldt Stores,* 131 B.R. at 664. "More specifically, Congress sought to prevent the 'ripple effect' created by 'the insolvency of one commodity or security firm from spreading to other firms and possibly threatening the collapse of the affected industry'." *Adler, Coleman Clearing Corp.*, 263 B.R. at 477 (quoting H. Rep. No. 97-420, at 1 (1982), reprinted in 1982 U.S.C.C.A.N. 583). Avoidance of the transfers the insiders caused Sentinel to make to themselves would have no impact on the clearance and settlement system that Congress intended to protect with section 546(e). *See Zahn v. Yucaipa Capital Fund*, 218 B.R. 656, 676 (D. R.I. 1998); *Wieboldt*, 131 B.R. at 664-65.

however, *Twombly* and its progeny say only that "at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Given the extraordinary detail in which the Complaint alleges Mosley's fraudulent intent and actions, it is preposterous to suggest that more is needed here.

Second, Mosley asserts that the payments made to him pursuant to his employment contract cannot be preferential transfers because they were not made on account of antecedent debts, and were made in the ordinary course of business. This, too, is incorrect. Salary or bonus payments made pursuant to an employment contract are made on account of antecedent debt. *Official Comm. of Unsecured Creditors of Enron Corp. v. Whalen (In re Enron Corp.)*, 357 B.R. 32, 44-45 (Bankr. S.D.N.Y. 2006). Moreover, it is Mosley's burden to affirmatively establish that any payments were made in the ordinary course of business. And of course, this all assumes that the payments were legitimate in the first instance, and cannot be avoided as fraudulent transfers. *See Krol v. Wilcek (In re H. King & Assocs.)*, 295 B.R. 246, 265, 285 (Bankr. N.D. Ill. 2003) (avoiding salary payments made to corporate insider as fraudulent transfers); *Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.)*, 238 B.R. 758, 772-73 (Bankr. N.D. Ill. 1999) (avoiding "bonus" paid to an insider when the insider gave no valuable service to corporation, but instead raided corporation's assets).

## Conclusion

For the reasons stated, Defendants' motions to dismiss should be denied.

Dated: January 10, 2008

Respectfully submitted,

FREDERICK J. GREDE, not individually but as Chapter 11 Trustee of Sentinel Management Group, Inc.

By: _____
One of his attorneys

Catherine L. Steege (ARDC # 6183529)
Chris C. Gair (ARDC # 6190781)
Vincent E. Lazar (ARDC # 6204916)
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL 60611
Phone: (312) 222-9350
Facsimile: (312) 527-0484

16

## CERTIFICATE OF SERVICE

I, Chris Gair, an attorney, hereby certify that on this 10th day of January, 2008, I caused a true and correct copy of the attached *Trustee's Consolidated Response to Defendants' Motions to Dismiss* to be served via U.S. Mail and email upon the parties listed on the attached service list.

_____
Chris Gair

1614560.1

## SERVICE LIST

William T. Neary
Roman Sukley
Gretchen Silver
United States Trustee
227 W. Monroe St., Suite 3350
Chicago, IL 60606
Email: William.Neary@usdoj.gov;
Roman.L.Sukley@usdoj.gov;
Gretchen.Silver@usdoj.gov

Abraham Brustein
Paul A. Greco
Di Monte & Lizak LLC
216 West Higgins Road
Park Ridge, IL 60068
Email: abrustein@dimontelaw.com;
pgreco@dimontelaw.com

David A. Kotler
Dechert LLP
Princeton Pike Corporate Center
997 Lenox Drive
Building 3, Suite 210
Lawrenceville, NJ 08648-2317
Email: david.kotler@dechert.com

Michael B. Nash
53 W. Jackson Blvd., Suite 620
Chicago, IL 60604
Email: mbnashchi@yahoo.com

Andrea Wood
Jamie Davidson
Angie Dodd
Securities and Exchange Commission
175 W. Jackson Blvd., Suite 900
Chicago, IL 60604
Email: woodar@sec.gov; davidsonj@sec.gov;
dodda@sec.gov

Paul Huey-Burns
Dechert LLP
1775 I St., NW
Washington, DC 20006-2401
Email: paul.huey-burns@dechert.com

Corey B. Rubenstein
Mark L. Rotert
Jonathan M. Cyrluk
Stetler & Duffy, Ltd.
11 S. LaSalle, Suite 1200
Chicago, IL 60603
Email: cruben@stetleranduffy.com;
mrotert@stetleranduffy.com;
cyrlukj@stetleranduffy.com

Michael T. Hannafan
Blake T. Hannafan
Eric J. Malnar
Hannafan & Hannafan, Ltd.
One East Wacker Drive, Suite 2800
Chicago, IL 60601
Email: mth@hannafanlaw.com;
bth@hannafanlaw.com;
ejm@hannafanlaw.com

Ted Poulos
Cotsirilos Tighe & Streicker
33 N. Dearborn St., Suite 600
Chicago, IL 60602
Email: tpoulos@cotsiriloslaw.com

Mark Bretscher
Commodity Futures Trading Commission
525 W. Monroe Street, Suite 1100
Chicago, IL 60661
Email: mbretscher@cftc.gov

1614560.1