UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HENRY SHATKIN, on behalf of himself and all others similarly situated, ) ) ) ) Plaintiff, ) v. ) ) THE BANK OF NEW YORK MELLON ) CORPORATION and THE BANK OF NEW ) YORK, ) ) Defendants. ) | ECF Case<br><br>Civil No. 07 Civ. 7928 (PAC) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY**

MAYER BROWN LLP
1675 Broadway
New York, New York  10019
(212) 506-2500

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I.   THE COMPLAINT MUST BE DISMISSED UNDER U.C.C. § 8-503(E) ............ 1

    A.   Plaintiff's Causes Of Action Are Premised On BNY's Role As A Purchaser ........ 1

    B.   Sentinel Is A Securities Intermediary Within The Definition Of U.C.C. § 8-102(a)(14) .................................................................................................... 3

    C.   BNY Is A Purchaser Who Obtained Control Of The Assets ................................ 4

    D.   The Complaint Fails To Allege That BNY Colluded With Sentinel ..................... 5

II.  THIS ACTION MUST BE STAYED UNDER NEW YORK U.C.C. § 8-503(D) .............. 7

III. THIS COURT SHOULD STAY THESE PROCEEDINGS PENDING THE RESOLUTION OF SENTINEL'S BANKRUPTCY PROCEEDING .............................. 8

IV.  PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED ............. 10

CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adam v. Jacobs*,
950 F.2d 89 (2d Cir. 1991) ................................................................................................. 9

*Drage v. First Concord Secs. Ltd.*,
707 N.Y.S.2d 782 (N.Y. Sup. 2000) .............................................................................. 4, 6

*Goldstein v. Time Warner N.Y. City Cable Group*,
3 F. Supp. 2d 423 (S.D.N.Y. 1998) ................................................................................... 8

*Jacobson v. Peat, Marwick, Mitchell & Co.*,
445 F. Supp. 518 (S.D.N.Y. 1977) .................................................................................... 2

*Johnny's Ent., Inc. v. Prudential Secs., Inc.*,
162 Fed. Appx. 239 (4th Cir. 2006) .................................................................................. 4

*LaSala v. Needham & Co.*,
399 F. Supp. 2d 421 (S.D.N.Y. 2005) ............................................................................... 9

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006) .............................................................................................. 2

*New York v. Cedar Park Concrete Corp.*,
741 F. Supp. 494 (S.D.N.Y. 1990) .................................................................................. 10

*Norwest Mortgage, Inc. v. Dime Savings Bank of N.Y.*,
280 A.D.2d 653 (2d Dep't 2001) ....................................................................................... 2

*SEC v. Credit Bancorp Ltd.*,
386 F.3d 438 (2d Cir. 2004) .............................................................................................. 4

**Statutes**

N.Y. U.C.C. § 1-201 .................................................................................................................. 4

N.Y. U.C.C. § 8-102 .................................................................................................................. 3

N.Y. U.C.C. § 8-106 .................................................................................................................. 5

N.Y. U.C.C. § 8-503 ........................................................................................................ *passim*

N.Y. U.C.C. § 8-504 ............................................................................................................... 3-4

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Other Authorities**

G. Van Ingen, *Liability of Bank Where Funds Deposited in Account of Trustee, Agent, or Other Fiduciary, as Such, Are Transferred to His Personal Account and Misappropriated*, 145 A.L.R. 445 (2008) ................................................................ 2

James Stevens Rogers, *Policy Perspectives on Revised U.C.C. Article 8*,
43 U.C.L.A. L. Rev. 1431 (1996) .............................................................................................. 6

Wright & Miller, 6 FPP § 1487 (2008) ........................................................................................ 10

## PRELIMINARY STATEMENT

In his Complaint ("FAC") against The Bank of New York ("BNY") and The Bank of New York Mellon Corp., Plaintiff Henry Shatkin ("Plaintiff") seeks both to circumvent Section 8-503 of the Uniform Commercial Code ("U.C.C.") by labeling his claims as negligence, conversion and breach of fiduciary duty, and to "jump ahead" of the creditor line by seeking damages from BNY that match precisely what he already seeks in ongoing bankruptcy proceedings. Plaintiff's opposition brief ("OB") is more of the same, ignoring what Plaintiff previously alleged in the Complaint and seeking, contrary to law and logic, to pursue claims against BNY that are already the subject of two adversary proceedings in the Bankruptcy Court for the Northern District of Illinois. For all the reasons discussed below, and those discussed in BNY's opening Memorandum of Law, the Complaint should be dismissed. In the alternative, this action should be stayed pursuant to Section 8-503(d) or in this Court's discretion.

## ARGUMENT

### I.  THE COMPLAINT MUST BE DISMISSED UNDER U.C.C. § 8-503(E).

Plaintiff argues that Section 8-503(e) does not apply because the Complaint premises liability on BNY's role as a custodian of Sentinel's assets and not on BNY's role as a purchaser of Sentinel's assets. OB 6-13. Plaintiff also argues that Section 8-503 does not preclude recovery here because (i) Sentinel is not a "securities intermediary," (ii) BNY is not a "purchaser," (iii) BNY did not take control of the assets, and (iv) the Complaint adequately alleges collusion. OB 13-19. Each of these arguments is baseless.

#### A.  Plaintiff's Causes Of Action Are Premised On BNY's Role As A Purchaser.

Plaintiff argues that BNY wore multiple "hats" and that although Section 8-503 might preclude recovery based on BNY's actions as a purchaser, BNY should still be liable as a

custodian of Plaintiff's assets.[1] OB at 7-13. This argument fails because, under Section 8-503(e), there plainly was a "purchase" of assets, and Plaintiff's allegations of misconduct are wholly dependent upon, and not separable from, that purchase.

Section 8-503(e) makes clear by its terms that it applies regardless of the legal theory asserted. *See* N.Y. U.C.C. § 8-503(e) (noting actions "framed in conversion, replevin, constructive trust, equitable lien, or other theory, may not be asserted"). Thus, Plaintiff can call his claims negligence, conversion, and breach of fiduciary duty[2] and cast them in terms of custodial liability, but that does nothing to protect Plaintiff from dismissal where BNY's alleged liability arises out of its conduct as a purchaser of assets.

---

[1] Plaintiff ignores that, as New York courts have explained, "[t]he general rule is that a depositary bank has no duty to monitor fiduciary accounts maintained at its branches in order to safeguard funds in those accounts from misappropriation." *Norwest Mortgage, Inc. v. Dime Sav. Bank of N.Y.*, 280 A.D.2d 653, 654 (2d Dep't 2001) (internal citations omitted). While in limited circumstances banks have been held liable for misappropriation of assets held in trust by a trustee, liability can be imposed only when the bank has *actual* knowledge or notice that a misappropriation is occurring. The mere transfer of funds from a segregated account to a Street Account—which is all that is alleged here—does not, under the law, constitute actual knowledge or notice. See G. Van Ingen, *Liability of Bank Where Funds Deposited in Account of Trustee, Agent, or Other Fiduciary, as Such, Are Transferred to His Personal Account and Misappropriated*, 145 A.L.R. 445 (2008) ("The bank has the right to presume that the fiduciary will apply trust funds in his individual account to their proper purposes under the trust, until such presumption is annulled by adequate notice or knowledge."). Furthermore, as explained at length in BNY's opening Memorandum (Def. Br. at 14-16), because there is no allegation that BNY knew the loans were not for the benefit of Sentinel's clients, the pledging of the assets to secure the loans cannot constitute actual knowledge or notice of misappropriation. Plaintiff relies heavily on *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006), but that case is wholly distinguishable on its facts. There, an attorney who had a close relationship with the branch manager at the bank in which trust accounts were held, repeatedly overdrew the accounts. The bank facilitated the attorney's malfeasance by repeatedly covering the overdrafts for the attorney. *Id.* at 281. This kind of egregious cooperation between an agent of the bank and the party misappropriating funds is unlike any of the allegations here.

[2] Plaintiff attempts to re-plead the Complaint in the opposition brief, recharacterizing the breach of fiduciary duty claim as a claim for aiding and abetting a breach of fiduciary duty. OB at 13. It is well settled that a plaintiff cannot re-plead a complaint in opposition to a motion to dismiss. *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977) ("[A] party is not entitled to amend his pleading through statements in his brief.").

Indeed, the alleged "custodial malfeasance"—the transfers of customer assets from Sentinel's segregated accounts to Sentinel's Street Account—*was the purchase*. Plaintiff argues that BNY "ignores the central allegations of the Complaint, which focus on BONY's failure to protect—and its improper transfer of—assets that were owned by Plaintiff and the Class." OB 7. But those "central allegations" are not independent from the purchase of assets; they *are* the purchase of assets. According to the Complaint, BNY's purchase of securities occurred by the transfer of customer assets from the segregated accounts to the Street Account. FAC ¶ 33 (noting that assets transferred into the Street Account "became immediately subject to a security agreement in favor of the Defendants" that guaranteed Sentinel's loan). Furthermore, Plaintiff's alleged damages are the loss of the assets "missing" from the segregated accounts. FAC ¶ 43. In other words, taking the allegations in the Complaint as true, if there had been no purchase, there would have been no basis for BNY's liability as a custodian. Without the alleged purchase, the funds would still be in the segregated accounts, there would have been no "misappropriation," and Plaintiff would have suffered no damages.

B. **Sentinel Is A Securities Intermediary Within The Definition Of U.C.C. § 8-102(a)(14).**

Plaintiff argues that Sentinel was not a "securities intermediary" because, although it "managed" assets on behalf of the putative class, it did not "maintain accounts for others." Plaintiff appears to suggest that for an entity to be a "securities intermediary" under U.C.C. § 8-102(a)(14) it must actually possess securities. OB 15 (arguing that a securities intermediary must "play a role in holding and transferring securities"). This argument is frivolous.

Plaintiff cannot and does not cite a single authority indicating that a securities intermediary must actually possess, or "play a role in holding," customer assets. In fact, the U.C.C. specifically contemplates that "[a] securities intermediary may maintain . . . financial

assets directly *or through one or more other securities intermediaries*," including a bank. N.Y. U.C.C. § 8-504(a) (emphasis added). As the Complaint alleges, Sentinel managed assets for its clients that were held at BNY. FAC ¶ 1. Furthermore, Sentinel sent "customer statements" to all of its customers, listing the assets "specifically identified by CUSIP number" in which the client had an interest. FAC ¶¶ 35-36. By maintaining securities accounts for others "through one or more other securities intermediaries," Sentinel was unquestionably a securities intermediary.[3]

### C.  BNY Is A Purchaser Who Obtained Control Of The Assets.

Plaintiff also contends that BNY somehow was not a purchaser because BNY does not have a valid lien and did not obtain control of the assets at issue. These assertions founder on the clear language of the Uniform Commercial Code.

In order to be a purchaser, one must "tak[e] by sale, discount, negotiation, mortgage, *pledge*, *lien*, *security interest*, issue or re-issue, gift or any other voluntary transaction creating an interest in property." N.Y. U.C.C. § 1-201(32)-(33) (defining purchase and purchaser). Plaintiff's argument that BNY cannot be a purchaser because the Complaint does not allege that BNY has a valid lien over the assets (OB 16-17) is absurd. The Complaint clearly alleges that (1) the assets were pledged to BNY, and (2) BNY has a security interest in the assets. FAC ¶ 10 (the assets "had been pledged"); FAC ¶¶ 5, 7 (the assets were "used as security"). Either of these allegations is sufficient to establish that BNY was a purchaser under the U.C.C.

Plaintiff's contention that BNY has not "taken" or "obtained control" of the assets because of subsequent proceedings in the bankruptcy court is equally flawed. OB 16-17. As an initial matter, this argument, because it depends upon a December 13, 2007 stipulation in the

---

[3]  Moreover, none of the cases cited by Plaintiff supports the novel theory that Sentinel needed to physically hold or possess securities to be a securities intermediary. *See SEC v. Credit Bancorp, Ltd.*, 386 F.3d 438 (2d Cir. 2004); *Johnny's Ent., Inc. v. Prudential Secs., Inc.*, 162 Fed. Appx. 239 (4th Cir. 2006); *Drage v. First Concord Secs. Ltd.*, 707 N.Y.S.2d 782 (N.Y. Sup. 2000).

bankruptcy court, looks beyond the allegations in the Complaint. OB 16-17. In his Complaint, Plaintiff alleges that BNY has "seized and has either sold or intends to sell" the assets at issue. FAC ¶ 42. According to the Complaint, therefore, BNY "has taken whatever steps are necessary . . . to place itself in a position where it can have the securities sold, without further action by the owner." N.Y. U.C.C. § 8-106, cmt. 1 (defining "control").

Furthermore, even if this Court were willing to look beyond the four corners of the Complaint, the assertion that BNY has not "taken" or "obtained control" of the assets because of its voluntary entry into the December stipulation with the Trustee misreads that stipulation. As a threshold matter, that agreement was signed *after* the instant suit was filed by Plaintiff, the relevant time-period for determining whether BNY has "taken" or "obtained control" for purposes of Section 8-503. Moreover, the December stipulation was simply a voluntary arrangement between the parties to allow the Trustee to oversee the process for monetizing the securities already controlled by BNY. Siddiqui Dec., Ex. A at 4. While this stipulation has allowed the Trustee to manage the liquidation of the securities in consultation with BNY (*id.* at ¶ 4), it also made explicit that the *proceeds* of this liquidation are to be returned to BNY's possession (*id.* at ¶ 7). Finally, the Plaintiff's implication that BNY ceded control in the securities by virtue of the stipulation ignores that the stipulation expressly states that "[n]either this Stipulation and Order nor any sale of Securities in accordance with this Stipulation and Order shall affect or be construed to affect or impact any rights, claims or interests of the estate, the Trustee, BNY, any customer of the Debtor, or any other person or entity in the Securities." *Id.* at ¶ 11.

### D.   The Complaint Fails To Allege That BNY Colluded With Sentinel.

In challenging BNY's argument that the Complaint fails to allege collusion, Plaintiff does not—and cannot—dispute the legal standard for collusion. That standard requires "customers of

- 5 -

a failed intermediary [to] show that the transferee from whom they seek to recover was ***affirmatively engaged in wrongful conduct***." N.Y. U.C.C. § 8-503, cmt. 3 (emphasis added). Relying upon a mere three allegations in the Complaint, Plaintiff contends that the Complaint alleges "numerous facts suggesting a joint effort by Sentinel and [BNY] to harm the class." OB at 18. But the Complaint does nothing of the sort, coming nowhere near alleging that BNY "affirmatively engaged" in wrongful conduct, or acted in concert with Sentinel and with actual knowledge of Sentinel's alleged malfeasance. The three allegations upon which Plaintiff relies assert simply that (1) BNY "wrongfully provided Sentinel" with loans, FAC ¶ 29 (even though the provision of loans in the context of clearing securities transactions is both routine and lawful), (2) BNY permitted Sentinel to transfer assets from one account to another, FAC ¶ 32 (again, a routine and otherwise lawful activity), and (3) it is "*possible*" that BNY engaged in this "complicity" because it had a security interest in the assets in the House account, FAC ¶ 33. OB at 17-19. But as the drafters of the U.C.C. understood, for purposes of Section 8-503, "there is nothing unusual or suspicious about a transaction in which a securities intermediary pledges securities that it was holding for its customers." James Stevens Rogers, *Policy Perspectives on Revised U.C.C. Article 8*, 43 U.C.L.A. Law Rev. 1431, 1533-34 (1996). Plaintiff must allege much more than the mere transfer of assets to satisfy the collusion standard under the U.C.C. Because Plaintiff falls woefully short of meeting that standard, the Complaint should be dismissed in its entirety.[4]

---

[4] Plaintiff's reliance on the *Drage* case is inapposite because the *Drage* court found that collusion was adequately alleged based on allegations that the bank affirmatively engaged in wrongful conduct, unlike the allegations against BNY here. The *Drage* opinion turned on the allegations that the Bank had extended credit to the securities intermediary knowing that it "did not have sufficient assets to cover the increased credit" and that it "artificially inflated the price" of the plaintiff's shares "to recover as much as possible." *Drage*, 707 N.Y.S.2d at 787. Here, however, at all times Sentinel's loan was secured by assets, and Plaintiff does not allege that BNY knew that Sentinel did not have its customers' permission

## II.   THIS ACTION MUST BE STAYED UNDER NEW YORK U.C.C. § 8-503(D).

Plaintiff argues that because the Trustee's complaint does not "include any claims made pursuant to Section 8-503(d)," this action should not be stayed. OB at 20. That argument ignores the actual language of U.C.C. § 8-503(3) and the very nature of the Trustee's complaint against BNY. Section 8-503(d) prohibits Plaintiff's suit unless the Trustee has elected not to bring suit to recover the financial assets at issue. There is nothing in the statute that states—or even suggests—that Section 8-503(d) does not apply if the Trustee has failed to cast his suit under *precisely* the same causes of action as the entitlement holder in a separate action. *See* N.Y. U.C.C. § 8-503(d)(4).

In any event, the Trustee **has**, in fact, sought to recover the assets at issue in this case. The Trustee's complaint seeks: avoidance of fraudulent transfers, Siddiqui Dec., Ex. C ¶¶ 168-82; avoidance of preferential transfers, *id.* ¶¶ 183-191; equitable subordination, disallowance, and equitable disallowance of BNY's claim, *id.* ¶¶ 192-220; a determination that BNY's lien is invalid, *id.* ¶¶ 221-29; and recovery for aiding and abetting a breach of fiduciary duty, *id.* ¶¶ 230-36. These actions are all premised on Sentinel's transfers of assets from its segregated accounts to its Street Account and essentially seek recovery of the allegedly unlawfully transferred assets—precisely the same "damages" sought here. Indeed, if the Trustee were to somehow recover assets from BNY in the pending adversary proceeding, and Plaintiff, as an unsecured creditor, were to recover his assets from the Sentinel estate, Plaintiff will be hard pressed to argue that he has suffered any damages. In short, this lawsuit would become moot.

Furthermore, even if the claims in the adversary proceeding brought by the Trustee against BNY somehow are not actions to recover Plaintiff's assets, the Trustee must still

---

to pledge these assets or that the assets were not pledged on the customers' behalf, or that BNY "artificially inflated the price" of assets so as to profit from their sale.

"elect[]" not to pursue recovery of the assets. The Trustee has never indicated that he intends to forfeit any such claims. Because the Trustee has already brought claims for recovery of these assets, or at the very least has not yet elected to *abandon* these claims, the Court should stay this action under Section 8-503(d).

### III. THIS COURT SHOULD STAY THESE PROCEEDINGS PENDING THE RESOLUTION OF SENTINEL'S BANKRUPTCY PROCEEDING.

At the very least, this Court should issue a discretionary stay pursuant to the inherent powers of the court. Def. Br. at 18-21. Rather than fully engage this argument, Plaintiff argues that the Trustee would not have standing to bring the precise claims at issue here. OB at 21-23. To begin with, the question whether the Trustee has standing to bring these claims should be resolved by the bankruptcy court. But more importantly, the Trustee's standing to bring the claims asserted by Plaintiff should have no effect on the determination of whether to grant a discretionary stay. Courts in this Circuit find a discretionary stay appropriate when another proceeding would have significant *bearing* on the proceeding before the court, even if the parallel proceeding is not controlling. Regardless of whether the Trustee can bring the precise claims at issue here, it seems impossible to argue that the impact of the parallel bankruptcy proceedings on this case is not significant enough to merit a stay.

As this Court has recognized, and as BNY argued in its opening brief:

> A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, *pending resolution of independent proceedings which bear upon the case.* This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and *does not require that the issues in such proceedings are necessarily controlling of the action before the court.*

*Goldstein v. Time Warner N.Y. City Cable Group*, 3 F. Supp. 2d 423, 437-38 (S.D.N.Y. 1998) (emphasis added) (internal quotation marks omitted). It is undisputed that the proceedings surrounding Sentinel's bankruptcy would "bear upon this case," even if they are not controlling

of this action. The Plaintiff, the putative class members, and BNY are all parties in that proceeding. *See* Gonzalez Dec., Ex. G (Plaintiff's proof of claim in bankruptcy proceeding). Sentinel's bankruptcy proceedings include, but are not limited to, the adversary proceedings filed by BNY and the Trustee, which will determine whether BNY had a valid, perfected, first-priority, security interest in and lien upon the assets at issue in Plaintiff's case. The general bankruptcy case will further determine, *inter alia*, how the remainder of Sentinel's assets are to be distributed (including what recovery the Plaintiff will get from Sentinel itself) and the extent to which the Blooms will be forced to return assets to Sentinel. In the bankruptcy case, it is the Trustee's goal to recover assets for distribution to the creditors, and if the Trustee is successful (recovering sufficient assets for distribution), Plaintiff and the putative class members would be compensated for any injury they may have allegedly suffered. Indeed, it is hard to imagine a situation where another proceeding would bear more on the case than this one.

As BNY pointed out in its opening brief, where two parallel proceedings are ongoing, a stay is most appropriate. *See LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005). Although Plaintiff argues that where two-actions are filed, the first-filed action should be the one to proceed (OB at 23), that statement oversimplifies the rule. As the Second Circuit has stated: "Where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience or special circumstances giving priority to the second." *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (internal quotation marks omitted). Here, the parallel bankruptcy case was first filed *and* special conditions give priority to the bankruptcy proceedings. Sentinel's bankruptcy case was filed on August 17, 2007, before Plaintiff's action here. FAC ¶ 40. And the bankruptcy proceedings will resolve the claims of *all* of Sentinel's creditors with respect to Sentinel (rather than this action which only seeks to resolve some claims

against BNY), such that the "balance of convenience" and "special circumstances" clearly favor giving preference to the bankruptcy proceedings over this action. This Court should stay proceedings in this action pending the resolution of Sentinel's bankruptcy case.

### IV. PLAINTIFF'S REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED.

Plaintiff's request for leave to amend (if the Complaint is dismissed) should be denied. Plaintiff has already amended his Complaint once. BNY filed a pre-motion letter on November 15, 2007—nearly five months ago—setting forth specifically, and with case support, the arguments it would make on this motion. Plaintiff had the opportunity to seek leave to amend the Complaint at that time, and again during the pre-motion conference before this Court. He should not now be given another opportunity. Wright & Miller, 6 FPP § 1487 (2008) (leave to amend under Fed. R. Civ. Proc. 15(a) may be denied "if the court determines that plaintiff has had sufficient opportunity to state a claim but has failed to do so"); *New York v. Cedar Park Concrete Corp.*, 741 F. Supp. 494, 496 (S.D.N.Y. 1990) ("[W]here plaintiff has already had a sufficient opportunity to plead, leave [to amend] may be denied.").

### CONCLUSION

For the foregoing reasons, and for the reasons given in BNY's opening Memorandum of Law, Plaintiff's Complaint must be dismissed, or, in the alternative, stayed.

Dated: New York, New York
       April 14, 2008

Respectfully submitted,
MAYER BROWN LLP

By:   */s/ Hector Gonzalez*
      Hector Gonzalez
      Matthew D. Ingber
      Daniel Kirschner

1675 Broadway
New York, New York 10019
(212) 506-2500

*Attorneys for Defendants*